[Cite as *State v. Pawlak*, 2016-Ohio-5926.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103444**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# BRANDON PAWLAK

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-591408-A

**BEFORE:** Celebrezze, J., Keough, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 22, 2016

**ATTORNEY FOR APPELLANT**

Marcus S. Sidoti
Jordan & Sidoti, L.L.P.
50 Public Square
Suite 1900
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Gregory Paul
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Brandon Pawlak ("appellant"), brings this appeal challenging his convictions and the trial court's sentence for aggravated robbery, aggravated vehicular assault, failure to comply with an order or signal of a police officer, breaking and entering, and grand theft. Specifically, appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence, and his trial counsel provided ineffective assistance. Furthermore, appellant argues that the trial court erred by imposing consecutive sentences, or, in the alternative, that the trial court's sentence is contrary to law. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from an incident on October 23, 2014, that began at Sweetbriar Golf Club ("Sweetbriar") in Avon Lake, Ohio and, after a high-speed chase, ended at Dover Gardens Tavern in Westlake, Ohio. Around 8:30 p.m., two employees, superintendent Daniel Hershey ("Hershey"), and his assistant John Sterna ("Sterna"), observed suspicious activity on the Sweetbriar grounds. Hershey observed two vehicles, a white van and a "dark-colored" pickup truck, behind the maintenance area. Hershey noticed an individual trying to gain entry into a dump truck in the maintenance area. Hershey alerted Sterna, who had a better vantage point, and asked him to look into the situation. Furthermore, Hershey contacted the Avon Lake Police Department to report

the suspicious activity.

{¶3} Sterna walked into his backyard to get a better view and observed two individuals in the maintenance area. One of the individuals was wearing a light gray hooded sweatshirt. Sterna approached the individuals and confronted a man, later identified as appellant, wearing a dark hooded sweatshirt. After Sterna confronted appellant, appellant jumped into Sweetbriar's white pickup truck and the truck sped away, nearly running over Sterna. Appellant's codefendant, Matthew Sowden ("Sowden"), fled the area in a white van. Appellant and Sowden left behind a blue pickup truck that had been stolen from Community Assessment and Treatment Services, Inc. ("CATS") in Cleveland, Ohio.

{¶4} The responding officers located the white van and Sweetbriar's white pickup truck, and attempted to initiate a traffic stop. Sowden, who was driving the van, complied with the officers and was taken into custody. Appellant, who was driving the pickup truck, attempted to evade the officers.

{¶5} Officers began pursuing appellant in Avon, Ohio, and continued their pursuit as appellant fled eastbound on Detroit Avenue. As appellant approached the intersection of Detroit Road and Dover Center Road in Westlake, Ohio, he lost control of the vehicle and crashed into Dover Gardens Tavern. Thirteen bar patrons were hospitalized as a result of the crash. Appellant attempted to climb out of the truck's rear window, but officers immediately took him into custody.

{¶6} The Cuyahoga County Grand Jury returned a 32-count indictment charging

appellant with (1)-(13) aggravated robbery, in violation of R.C. 2911.01(A)(3); (14)-(26) aggravated vehicular assault, in violation of R.C. 2903.08(A)(2)(b), with furthermore clauses alleging that appellant was driving under suspension; (27) failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B); (28) felonious assault, in violation of R.C. 2903.11(A)(2); (29) and (31) breaking and entering, in violation of R.C. 2911.13(B); and (30) and (32) grand theft, in violation of R.C. 2913.02(A)(1). Appellant pled not guilty to the indictment.

{¶7} The trial court referred appellant to the court psychiatric clinic for a competency evaluation. Dr. Amy Ginsberg evaluated appellant and concluded that he was able to understand the nature of the proceedings and capable of assisting in his defense. A jury trial commenced on July 20, 2015. Defense counsel moved for a Crim.R. 29 judgment of acquittal at the close of the state's case and at the close of all the evidence. The trial court denied both motions.

{¶8} At the close of trial, the jury found appellant not guilty of felonious assault as charged in Count 28 and breaking and entering as charged in Count 29. The jury found appellant guilty of the remaining 30 counts. The trial court remanded appellant and set the matter for sentencing.

{¶9} At the sentencing hearing, the court heard testimony from several victims who were injured at Dover Gardens Tavern, victims' family members, the prosecutor, defense counsel, appellant's mother, and appellant. The trial court sentenced appellant to a prison term of 35 years and 6 months: ten years on Counts 1-13, to be served

concurrently to one another; 30 months on Counts 14-26, to be served consecutively to one another and concurrently to Counts 1-13; three years on Count 27, to be served prior and consecutively to Counts 1-26 and 30-32; and 12 months on Counts 30, 31, and 32, to be served concurrently with Counts 1-26, and consecutively to Count 27.

**{¶10}** Appellant filed the instant appeal assigning three errors for review:

I. The guilty verdict cannot be upheld because the conflicting evidenc[e] and testimony presented at trial did not establish the appellant's guilt beyond a reasonable doubt.

II. The guilty verdict cannot be upheld because trial counsel provided ineffective assistance of counsel thereby violating appellant's right to counsel.

III. The sentence of the appellant was in error.

## II. Law and Analysis

**{¶11}** Appellant's first assignment of error challenging his convictions encompasses both sufficiency and manifest weight issues. Thus, we will apply both standards.

## A. Sufficiency

**{¶12}** First, appellant argues that the evidence at trial did not establish his guilt beyond a reasonable doubt. Specifically, appellant contends that the state failed to prove, beyond a reasonable doubt, that he drove the truck that crashed into Dover Gardens Tavern.

**{¶13}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266,

2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶14} In the instant matter, appellant does not allege that he was not in the truck that crashed into Dover Gardens Tavern. Rather, appellant suggests that he was a passenger and that another man was driving the truck. Appellant contends that none of the state's witnesses "affirmatively state[d] that they saw [him] driving the [truck]." We disagree.

{¶15} The state presented the testimony of the following eyewitnesses: (1) Sterna, (2) Officer Andrew Kehl, (3) Officer Nathan Fox, (4) Devin McElhannon, and (5) Katie Murphy.

{¶16} First, Sterna testified that he confronted appellant in Sweetbriar's maintenance area and that appellant ran behind Sweetbriar's truck. Sterna observed appellant get into the truck's driver's seat. Sterna testified that "[n]o more than 15 seconds" after appellant got into the driver's seat, the truck "pull[ed] a 180" and began to follow the van. Sterna acknowledged that he could not determine who was driving the truck because the truck was bearing down on him and the lights were shining in his eyes. However, Sterna clarified that moments before the truck drove off, he saw appellant in the driver's seat.

{¶17} Second, Avon Lake Police Officer Andrew Kehl testified that he first

encountered the stolen truck on Jaycox Road, a driving distance of approximately 30 seconds from Sweetbriar. He testified that he observed one occupant in the truck's driver's seat, and did not see a second occupant in the truck at any time. Officer Kehl explained that he never lost visual contact with the truck, either during the chase or when the truck crashed into Dover Gardens Tavern. Officer Kehl testified that after the truck crashed into the bar, he exited his cruiser and observed "[a] subject coming out of the back window of the truck." Officer Kehl explained that the individual attempted to climb through the back window on the driver's side. "Less than ten seconds" thereafter, Officer Kehl apprehended the individual. Officer Kehl identified appellant as the individual who climbed out of the truck. Officer Kehl testified that neither the passenger's door nor the driver's door opened after the vehicle crashed into the bar. Based on his observations, Officer Kehl did not believe a second individual was in the truck with appellant.

{¶18} Third, Westlake police officer Nathan Fox testified that he witnessed the truck crash into Dover Gardens Tavern after driving over "stop sticks." Officer Fox testified that he never lost visual contact with the truck as it crashed into the bar. Officer Fox testified that he observed the suspect crawl through a window into the bed of the truck. Officer Fox explained that he and Officer Kehl pulled the suspect from the bed of the truck to the ground and handcuffed him. Officer Fox identified appellant as the suspect who he apprehended. Officer Fox testified that he was "certain" that there was only one occupant inside the truck when it crashed into the bar.

{¶19} Fourth, Devin McElhannon ("McElhannon"), testified that he was inside Dover Gardens Tavern when the truck crashed into the bar.    McElhannon testified that he "saw the person that was driving the truck trying to get out of the vehicle" and that he "went after [the person]."   McElhannon explained that the person was trying to get out of the "driver's portion" of the truck.   McElhannon identified appellant as the person who was trying to get out of the vehicle that had crashed into the bar.   By the time McElhannon got to appellant, he was on the ground and officers were handcuffing him. McElhannon testified that he did not see anybody jump out of the truck and run away.

{¶20} Fifth, Katie Murphy ("Murphy") testified that she was outside of Dover Gardens Tavern when the truck crashed into the bar.   Murphy explained that she maintained a constant view of the truck as it traveled eastbound on Detroit Road and crashed into the bar.   Murphy testified that "less than a minute [later]," she saw a man crawl out of the cab of the truck and into the bed.   Murphy testified that officers immediately took this man into custody.   Murphy explained that she only saw one person exit the truck after it crashed into the bar.

{¶21} In addition to the testimony of the eyewitnesses, the state presented the testimony of Reed Reikowski, a detective with the Avon Lake Police Department. Detective Reikowski testified about a jail phone call that appellant placed to codefendant Sowden three days after the incident.   The phone call was played in its entirety to the jury.   Detective Reikowski testified that during the phone call, Sowden said to appellant, "'[i]t's funny you were able to drive through Avon Lake and Avon without a ding or a

dent then you hit Westlake,' and I think he said, '[b]oom.'" (Tr. 808.) Detective Reikowski clarified that Sowden said to appellant, "you were able to drive," rather than "they" or "we."

{¶22} After reviewing the record, we find that the state presented sufficient evidence, if believed, to demonstrate that appellant drove away from Sweetbriar in the stolen truck, evaded the police officers that were pursuing him, and crashed the truck into the Dover Gardens Tavern.

## B. Manifest Weight

{¶23} Second, appellant argues that his convictions are against the manifest weight of the evidence. Specifically, appellant contends that the state presented "conflicting evidence and testimony" at trial regarding the identity of the individual who drove the stolen truck from Sweetbriar and crashed the truck into the Dover Gardens Tavern.

{¶24} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶25}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶26}** In the instant matter, the defense's theory at trial was that three individuals were present at Sweetbriar: (1) a man in a light gray hoodie, (2) a man in a dark hoodie, and (3) *the driver of the van* who was wearing an orange hoodie. (Tr. 1797-1799.) However, on appeal, appellant contends that the trial testimony demonstrated that a third individual was present at Sweetbriar and that this individual was *the driver of the truck*, and thus, responsible for crashing the truck into Dover Gardens Tavern: "Sterna's testimony established that while the crime was originating, at the Sweetbriar Golf Club, there were three (3) men, one (1) man in a light gray sweatshirt, one (1) man in a dark

gray sweatshirt, and the operator of the white truck who [Sterna] had never seen." Appellant's brief at 13.

{¶27} Sterna explained that his backyard connects to Sweetbriar. Sterna stated that after receiving a phone call from Hershey regarding suspicious activity at Sweetbriar, he walked into his backyard to get a better view of the maintenance area. Sterna testified that he noticed two individuals near the fuel tanks in the maintenance area. Sterna opined that the individuals were roughly 50 to 60 yards away from his backyard. Sterna explained that one of the individuals was wearing a light gray hooded sweatshirt, and that the sweatshirt's hood was up. Sterna testified that after observing the individual in the light gray hoodie from his backyard, he did not see this individual again.

{¶28} Sterna explained that he put on some clothes and approached the area where he observed the two individuals. As he approached the area on foot, Sterna encountered a second individual wearing a dark hoodie from a distance of approximately 15 feet. The individual wearing the dark hoodie, later identified as appellant, did not have his hood up, and Sterna was able to see his face. Sterna explained that after he confronted appellant, appellant ran and jumped into Sweetbriar's white pickup truck, which was already running.

{¶29} Sterna testified that the white van sped off and the white pickup truck followed the van. He testified that he did not see the individual driving the van because he was focusing on the van's license plate. Sterna testified that he did not see the individual driving the pickup truck because it was bearing down on him at a high rate of

speed and the truck's lights were shining in his eyes.

{¶30} After viewing dash-cam footage, Sterna acknowledged that the individual who was driving the van, later identified as codefendant Sowden, was wearing an orange sweatshirt. Sterna explained that he did not see either of the individuals at Sweetbriar wearing orange clothing. On cross-examination, Sterna testified that the color of Sowden's hoodie was "very indistinct." Sterna further explained that he could not determine that Sowden's hoodie was orange from the dash-cam footage.

{¶31} Appellant's manifest weight challenge is premised on the theory that a third individual, who Sterna never observed, was sitting in the white pickup truck and sped off in the truck after appellant jumped inside. On the other hand, the state's theory was that codefendant Sowden drove away from Sweetbriar in the van and appellant drove away in the truck. As outlined above, the eyewitnesses at Dover Gardens Tavern only saw appellant climbing out of the truck after it crashed into the bar. None of the witnesses testified that a second individual emerged from the truck following the crash. When there are two versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the factfinder who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994); *DeHass*, 10 Ohio St.2d at 231, 227 N.E.2d

Accordingly, appellant's convictions are not against the manifest weight of the evidence simply because the jury rejected the defense's version of the events.

**{¶32}** Furthermore, appellant argues that the trial testimony "was consistently riddled with allegations that a man in a red shirt had been driving the [truck]." Appellant suggests that Thomas Sutton ("Sutton"), who was inside the bar after the crash and was wearing a red hoodie, drove the vehicle that crashed into the bar. We disagree.

**{¶33}** Officer Kehl testified that when he arrested appellant, appellant informed him that someone else was driving the truck. Officer Kehl explained that appellant did not identify the person he claimed had been driving the truck, but said he was wearing a red sweatshirt. Officer Kehl testified that he found no merit to appellant's allegation and that he did not find an individual wearing a red sweatshirt.

**{¶34}** McElhannon testified that when the officers were handcuffing appellant, appellant was "yelling that it wasn't him. It was the guy in the red hoodie."

**{¶35}** Sutton testified that he was at Dover Gardens Tavern on the night of the incident and that he was wearing a red hoodie. Sutton explained that at some point in time, he took off the red hoodie and placed it on a chair at his table. Sutton testified that when the truck crashed into the bar, "I [ran] as far as I could to avoid anything." Sutton explained that he ran towards the bathrooms in the back of the bar to get out of the way of the commotion and the debris. Sutton testified that he had been at Dover Gardens Tavern for "an hour or so" before the truck crashed into the bar. Sutton stated that he remained inside the bar for approximately 20 minutes after the accident, and that he

remained on the premises outside of the bar for another hour or two. Sutton testified that he picked up his red hoodie before exiting the bar. Sutton explained that he told officers that he was not the driver of the truck and that he had been sitting at the bar drinking when the crash occurred.

{¶36} Marietta Bernarding ("Bernarding"), testified that she arrived at Dover Gardens Tavern on the night of the incident between 8:00 and 8:30 p.m. Bernarding testified that before the truck crashed into the bar, she saw a customer wearing a red hoodie. She explained that she made a statement to police officers on the night of the incident. In her statement, Bernarding asserted that she did not see an individual wearing a red hoodie exit the truck after it crashed into the bar.

{¶37} After reviewing the record, we cannot say that appellant's convictions are against the manifest weight of the evidence. Appellant's self-serving statement to Officer Kehl alleging that a man wearing a red shirt crashed the truck into Dover Gardens Tavern is entirely unsupported by the testimony adduced at trial. Appellant was the only individual that the witnesses observed exiting the truck after the crash. The trier of fact heard the evidence presented and was able to take into account inconsistencies in the testimony and to assess the credibility of the witnesses. We cannot say that this is the exceptional case where the evidence weighs heavily against the convictions nor that the jury clearly lost its way and created a manifest miscarriage of justice.

**{¶38}** Based on the foregoing analysis, we find that appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.

### C. Ineffective Assistance of Counsel

**{¶39}** In his second assignment of error, appellant argues that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. Specifically, appellant contends that trial counsel's failure to file a motion to suppress evidence obtained during Detective Reikowski's interview of appellant constituted ineffective assistance.

**{¶40}** To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**{¶41}** The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies.  * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Strickland* at *id*.

{¶42} In the instant matter, we need not address the first *Strickland* prong because appellant cannot show prejudice, or a reasonable probability that but for trial counsel's failure to file a motion to suppress the evidence, the proceeding's result would have been different.

{¶43} Detective Reikowski testified that he interviewed appellant on the day after the incident at Dover Gardens Tavern.  Detective Reikowski explained:

> we sat him down, we read him *Miranda*, and explained very clearly we wanted him to read the *Miranda*, understand it.  He pretty quickly decided he didn't want to, but he was trying to pull information from us.  So it's pretty common procedure to just kind of let him talk.  So he was talking about it, and *he made reference to the fact he knows he's the driver* and there's nothing he can do to change that.
>
> And then we jumped into the fictional red shirt, and I told him, "[w]e could talk about that, but again I need *Miranda* to cover myself and you so you understand what we're doing."   (Tr. 773.)

(Emphasis added.)

{¶44} Appellant contends that his statement to Detective Reikowski "is tantamount to a confession" and that because his attorney did not move to suppress his statement, the state "was ultimately permitted to use this [statement] as a confession."   Furthermore, appellant argues that had the "confession" not been admitted at trial, it is unlikely that he would have been convicted.

**{¶45}** After reviewing the record, we find that appellant's ineffective assistance claim fails under the second *Strickland* prong. Detective Reikowski clarified that appellant made no admission as to being the driver of the truck that crashed into the bar: "[t]he statements when he said, 'I know I'm the driver,' were followed up by references to the red-shirted guy." (Tr. 774.) Even if appellant's trial counsel had moved to suppress his statements to Detective Reikowski, the state presented ample evidence that appellant drove the truck that crashed into Dover Gardens Tavern. Furthermore, appellant's statement was voluntary and made after he had been *Mirandized*. Accordingly, appellant cannot demonstrate that he was prejudiced by counsel's alleged deficient performance.

**{¶46}** Based on the foregoing analysis, appellant's second assignment of error is overruled.

### D. Trial Court's Sentence

**{¶47}** In his third assignment of error, appellant argues that the trial court erred in imposing consecutive sentences. Specifically, appellant contends that the court erred in finding that consecutive sentences are necessary to protect the public from future crime and are not disproportionate to the offenses.

**{¶48}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, Slip Opinion No. 2016-Ohio-1002, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and

convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶49} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶50} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist.

Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶51} In the instant matter, the trial court ordered the aggravated vehicular assault counts to run consecutively to one another and ordered the failure to comply count to run consecutively to all other counts.

{¶52} Appellant argues that the trial court erred in finding that consecutive sentences are required to protect the public from future crime and are not disproportionate to the offenses. Appellant suggests that the trial court imposed consecutive sentences because he "did not accept full responsibility at the sentencing hearing, and maintained his innocence." Furthermore, although appellant concedes that the trial court made the necessary findings to impose consecutive sentences, he contends that the trial court's findings "were nothing more than a mere talismanic incantation, and insufficient under *Bonnell*." After reviewing the record, we disagree.

{¶53} In the instant matter, the record reflects that the trial court made the requisite R.C. 2929.14(C)(4) findings in support of its imposition of consecutive sentences. In making the first finding, the trial court stated that "consecutive service is necessary to protect the public from future crime and to punish this defendant." (Tr. 1997-1998.) Furthermore, the trial court stated, "I'm afraid that you will kill people in the future[.]" (Tr. 2000.) In making the second finding, the trial court stated that "consecutive

sentences are not disproportionate for the seriousness of this defendant's conduct and to the danger that you impose to the public." (Tr. 1998.) In making the third finding under R.C. 2929.14(C)(4)(b), the trial court stated that "at least two of the multiple offenses were committed in this case as part of one or more courses of conduct and that the harm that you caused was so great and so unusual that no single prison term for any of these offenses committed as part of any course of conduct would adequately reflect the seriousness of this conduct." (Tr. 1998.)

{¶54} The trial court emphasized that in 2011, appellant was convicted of failure to comply after he "ran a red light, and became involved in an accident after he was fleeing from the police."[1] (Tr. 1982.) The trial court found the 2011 incident to be significant because appellant fled from the police in the instant matter "knowing that [he] created an accident the last time that [he] fled." (Tr. 1999.) The trial court stated that "[p]olice chases are by far the most dangerous thing that the police officers encounter." (Tr. 1998.) The trial court discussed how appellant's actions affected the victims:

> you have created and caused havoc in our society. You have hurt these people so tremendously that you've changed the course of hundreds of people's lives as a result of what you did that day.
>
> * * *
>
> We are so lucky that a family of five is not dead as a result of what happened. Had you entered Dover Center that night, you could have killed people. You could have killed any one of these people easily and you

---

[1] In Cuyahoga C.P. No. CR-11-547153-A, appellant pled guilty to failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), and was sentenced to a prison term of two years.

almost killed four of them as a result of what happened. (Tr. 1999-2000.)

Finally, the trial court noted that appellant did not accept responsibility for his actions and continued to maintain that someone else was driving the truck, despite all of the evidence to the contrary.

**{¶55}** In light of the foregoing analysis, we conclude that the trial court made the appropriate consecutive sentence findings and engaged in the analysis required under R.C. 2929.14(C)(4). We cannot "clearly and convincingly" find that the record does not support the trial court's findings. Furthermore, the trial court properly incorporated its findings into the sentencing journal entry as required. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus.

**{¶56}** In the alternative, appellant argues that the trial court's sentence was contrary to law under R.C. 2953.08(A)(1). R.C. 2953.08 provides, in relevant part:

> (A) a defendant who is convicted of * * * a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
>
> (1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section 2929.14 or section 2929.142 of the Revised Code, the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the following circumstances:
>
> (a) The sentence was imposed for only one offense.
>
> (b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term *for the offense of the highest degree*.

(Emphasis added.)

{¶57} Although appellant asserts that the trial court only imposed the maximum sentence for the failure to comply count, the record reflects that the trial court also imposed the maximum sentence for breaking and entering, a fifth-degree felony, as charged in Count 31. Appellant argues that "the [t]rial [c]ourt's use of non-maximum consecutive sentences to fashion a virtual life sentence is tantamount to [R.C. 2953.08(A)(1)] issues, and is therefore contrary to law[.]" Appellant's brief at 19. In support of his argument, appellant contends that (1) "this was not the most egregious form of this crime," (2) the truck only crashed into Dover Gardens Tavern because the police "used the speed sticks in a dangerous fashion," (3) there was some evidence suggesting that he was not the driver of the truck, and (4) he did in fact express remorse to the victims.

{¶58} A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Carrington*, 8th Dist. Cuyahoga No. 100918, 2014-Ohio-4575, ¶ 22, citing *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

{¶59} This court has held that a trial court "fulfills its duty under the statutes by indicating that it has considered the relevant sentencing factors." *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-603, ¶ 14, citing *State v. Saunders*, 8th Dist. Cuyahoga

No. 98379, 2013-Ohio-490, ¶ 4. The trial court "need not go through each factor on the record — it is sufficient that the court acknowledges that it has complied with its statutory duty to consider the factors without further elaboration." *Id.*, citing *State v. Pickens*, 8th Dist. Cuyahoga No. 89658, 2008-Ohio-1407, ¶ 6. In fact, consideration of the appropriate factors set forth in R.C. 2929.11 and 2929.12 can be presumed unless the defendant affirmatively shows to the contrary. *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13.

{¶60} After reviewing the record, we find that the trial court's sentence is not contrary to law. Appellant's sentences for his felonies of the first, third, fourth, and fifth degree were within the statutory ranges under R.C. 2929.14(A). Furthermore, during the sentencing hearing, the trial court stated that it "considered all of the required factors under 2929.11, 12, and 13[.]" The trial court's sentencing journal entry provides, in relevant part, that "the court considered all required factors of the law. The court finds that prison is consistent with the purposes of R.C. 2929.11." Aside from the trial court's notation in the sentencing entry that it "considered all required factors of law" including, specifically, R.C. 2929.11, the record in this case reflects that the trial court did, in fact, consider both R.C. 2929.11 and 2929.12 when sentencing appellant.

{¶61} The trial court reviewed a prior presentence investigation report and appellant's competency report. The trial court heard statements from several victims and their family members, the prosecutor, defense counsel, appellant's mother, and appellant. The trial court proceeded to review appellant's extensive criminal record that began in

1998. Appellant's record includes charges of burglary, gross sexual imposition, robbery, domestic violence, driving under suspension, fleeing the scene, attempted felonious assault, receiving stolen property, assault, resisting arrest, breaking and entering, criminal damaging, criminal mischief, attempted theft, failure to comply, possessing criminal tools, contributing to the delinquency of a minor, grand theft of a motor vehicle, bringing stolen property into another state, and driving with expired and fictitious plates.

{¶62} The trial court considered the harm that appellant caused to the victims. Thirteen Dover Gardens Tavern patrons were hospitalized as a result of appellant's conduct, and 4 of the 13 patrons were life-flighted with critical injuries. The trial court considered that appellant did not take responsibility for his actions and, despite all of the evidence to the contrary, insisted that he was not the driver of the truck that crashed into the bar.

{¶63} Accordingly, because the felony sentences were within the permissible statutory ranges and the trial court considered the required factors of law, appellant's sentence is not contrary to law.

{¶64} Finally, we note that appellant's reliance on R.C. 2953.08(A)(1) is misplaced. Appellant's aggravated robbery convictions were the offenses of the highest degree, and the trial court did not impose the maximum prison term for these first-degree felonies.

{¶65} Based on the foregoing analysis, we conclude that the trial court did not err by imposing consecutive sentences. The trial court made the appropriate consecutive

sentence findings and engaged in the proper analysis under R.C. 2929.14(C)(4), and we cannot "clearly and convincingly" find that the record does not support the trial court's findings. Furthermore, because the trial court sentenced appellant within the permissible statutory ranges and considered the required factors of law, appellant's sentence is not contrary to law.

{¶66} Accordingly, appellant's third assignment of error is overruled.

### III. Conclusion

{¶67} After thoroughly reviewing the record, we find that appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. We cannot say that trial counsel's failure to file a motion to suppress the evidence from appellant's interview with Detective Reikowski constituted ineffective assistance. Furthermore, appellant cannot demonstrate a reasonable probability that the proceeding's result would have been different if his trial counsel had moved to suppress the evidence. Finally, the trial court did not err by imposing consecutive sentences, and appellant's sentence is not contrary to law.

{¶68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

KATHLEEN ANN KEOUGH, P.J., and
SEAN C. GALLAGHER, J., CONCUR