[Cite as *State v. Roberts*, 2025-Ohio-4467.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114736 |
| DESHAWN A. ROBERTS, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 25, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-690266-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chauncey Keller and Jillian Piteo, Assistant Prosecuting Attorneys, *for appellee.*

Susan J. Moran, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Deshawn A. Roberts ("Roberts") appeals the trial court's imposition of the maximum sentence for his convictions and asks this court to reverse the maximum sentences and either impose a lesser sentence or

remand to the trial court for further proceedings consistent with the imposition of either probation or a reduced prison sentence.

{¶ 2} We affirm the trial court's judgment.

{¶ 3} Roberts was indicted on March 19, 2024, for six counts of gross sexual imposition ("GSI"), R.C. 2907.05(A)(4), third-degree felonies for acts that occurred between 2010 and 2012. The victims were Roberts's stepdaughters, D.D. (Counts 1 through 3) and K.D. (Counts 4 through 6). During the cited period, D.D. was between 10 and 12 years of age and K.D. was between 10 and 13 years of age.

{¶ 4} On September 18, 2024, Roberts pleaded guilty to Count 1, amended to GSI under R.C. 2907.05(A)(1), a fourth-degree felony involving victim D.D. As to victim K.D., Roberts pleaded guilty to Count 4, GSI under R.C. 2907.05(A)(4), a third-degree felony as charged in the indictment.

{¶ 5} On November 13, 2024, after receipt of the mitigation-of-penalty report and presentence-investigation report ("PSI"), sentencing was conducted. The trial court heard impact statements on behalf of D.D. and K.D. revealing the devastating effect the events have had on their lives. Statements in mitigation were made by Roberts and his counsel, his son, Roberts's employer, and others.

{¶ 6} Roberts was sentenced to an 18-month maximum term for the fourth-degree felony GSI per R.C. 2929.14(A)(4) under Count 1. For the Count 4 third-degree felony GSI under R.C. 2929.14(A)(3)(a), Roberts was sentenced to a concurrent maximum term of five years.

{¶ 7} Roberts assigns a single error: The trial court erred by imposing maximum sentences that were not supported by the record and were contrary to law.

{¶ 8} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1, 21. Under the statute, an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that the record does not support the sentencing court's findings as required by relevant sentencing statutes or the sentence is otherwise contrary to law.

{¶ 9} A sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Pawlak*, 2016-Ohio-5926, ¶ 58 (8th Dist.). Conversely, if the sentence is within the statutory range for the offense and the trial court considered both the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, the court's imposition of any prison term for a felony conviction is not contrary to law. *State v. Woodard*, 2018-Ohio-2402, ¶ 35 (8th Dist.); *see also State v. Clay*, 2020-Ohio-1499, ¶ 26 (8th Dist.), citing *Pawlak* at ¶ 58.

{¶ 10} "This court also recognized that 'otherwise contrary to law' means 'in violation of statute or legal regulations at a given time.'" *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law*

*Dictionary* 328 (6th Ed.1990). "Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Id.*

{¶ 11} Roberts does not advance that this sentence falls outside of the statutory range for the offenses because the sentence is within the statutory range. Consequently, we focus on whether the trial court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and 2929.12 or entertained immaterial factors.

{¶ 12} "R.C. 2929.11 and 2929.12 list several factors that the trial court must consider." *State v. Roby*, 2023-Ohio-1889, ¶ 10 (8th Dist.).

> However, "R.C. 2929.11 and 2929.12 are not fact-finding statutes and although the trial court must consider the factors, it is not required to make specific findings on the record regarding its consideration of those factors, even when imposing a more-than-minimum sentence."

*Id.*, quoting *State v. Artis*, 2022-Ohio-3819, ¶ 13 (8th Dist.), citing *State v. Pate*, 2021-Ohio-1089, ¶ 6 (8th Dist.).

{¶ 13} "'Indeed, consideration of the factors is presumed unless the defendant affirmatively shows otherwise.'" *Id.*, quoting *Artis* at ¶ 13, citing *State v. Wright*, 2018-Ohio-965, ¶ 16 (8th Dist.). "'Furthermore, a trial court's statement in its sentencing journal entry that it considered the required statutory factors is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12.'" *Id.*, quoting *Artis* at ¶ 13, citing *State v. Sutton*, 2015-Ohio-4074, ¶ 72 (8th Dist.); *State v. Clayton*, 2014-Ohio-112, ¶ 9 (8th Dist.).

**{¶ 14}** Roberts offers that the trial court failed to give sufficient consideration to certain sentencing factors of R.C. 2929.12(D) and (E) that Roberts contends demonstrate that he is not likely to commit future crimes that would justify sentences of less than the maximum sentences.

**{¶ 15}** R.C. 2929.12(D) provides:

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing; was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code; was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code; was under transitional control in connection with a prior offense; or had absconded from the offender's approved community placement resulting in the offender's removal from the transitional control program under section 2967.26 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

**{¶ 16}** R.C. 2929.12(E) states:

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4) The offense was committed under circumstances not likely to recur.

(5) Except as provided in division (G) of this section, the offender shows genuine remorse for the offense.

**{¶ 17}** Roberts offers the trial court failed to take into account

the fact that (1) at the time of the offenses, Mr. Roberts was neither on probation, parole, or post-release control; (2) he was never adjudicated a delinquent child, nor did he have a history of criminal convictions as an adult; (3) Mr. Roberts has not demonstrated a pattern of drug or alcohol abuse that is related to the offense; (4) Mr. Roberts showed genuine remorse for the offenses; (5) Mr. Roberts had led a law-abiding life for a significant number of years; and (6) the offenses were committed under circumstances not likely to recur.

Brief of appellant, p. 5.

**{¶ 18}** At the sentencing, the trial court cited its consideration of the PSI, mitigation-of-penalty report, and several character reference letters proffered on behalf of Roberts including one from his employer. Victims D.D. and K.D. were unable to appear. The State advised the trial court of the 2015 police report regarding the sexual abuse made by then 17-year-old K.D. in the Greater Cleveland area suburb where the family lived. When informed that, due to K.D.'s age, police

would have to speak with D.D. and K.D.'s mother who was still married to Roberts at the time, K.D. effectively shut down and police were unable to contact her. In 2023, 23-year-old D.D. and three siblings made a report to the same police department.

{¶ 19} D.D.'s husband read her impact statement to the trial court. The statement revealed the trauma, pain, and residual effects of the sexual abuse and said, in part:

> I find it ironic that the one thing that can help in this situation is the one thing that [Roberts] is trying to preserve for himself. How is it fair that after decades of time we still feel the pain, the hurt, and the lack of self-worth? How is it fair that [Roberts] has spent so many years unpunished by his actions and decisions? The simple answer is that it isn't fair, but thankfully that time has come; the time for [Roberts] to receive his punishment. It's time for [Roberts] to let — to lose his time as a free man. He has been free for long enough.
>
> . . .
>
> [Roberts] is an alleged Christian so he knows how precious children are to God but he chose to commit this evil crime. According to [Roberts's] faith, he deserves the max punishment. Let's grant him that.
>
> In closing, we, the victims, believe [Roberts] deserves the worst possible punishment. We, the victims, want justice. We, the victims, want to sleep at night knowing we're finally safe. Thank you.

Tr. 24-26.

{¶ 20} D.D.'s mother-in-law, her husband's mother, read the victim-impact statement of her sister K.D. for the record. The letter shared K.D.'s excitement that Roberts was going to be a stepfather to her and her siblings. But, "[l]ittle did we know you would be the worst thing that ever happened to us. It was scary how quickly you went from the nicest person to a complete and total nightmare." Tr. 28.

{¶ 21} The narrative revealed the sexual and nonsexual events, the impact it had at the time, and the continuing effects on her life.

> At the age of 11, you started to change the way you treated me. You suddenly wanted to spend time with me, inviting me up to your room to watch movies. You called this daddy-daughter time. I felt like I finally mattered. I felt loved. But this was short lived.
>
> The sexual abuse started on these movie nights. I knew that was the reason you had been so kind. You had deceived me into thinking you actually cared about me. Unfortunately, after craving this father-daughter connection for so long, I kept quiet so I could keep it. One whole year of allowing you to do unspeakable things to me before I finally decided it wasn't worth the pain anymore.
>
> I told mom, but you, being the manipulative person you are, convinced – you convinced her it was my fault and I made you do these things to me at the age of only 11 years old. You knew mom wasn't in her right mind and you used that to your advantage.
>
> The abuse has caused me unrepairable damages. I've been diagnosed with both PTSD and borderline personality disorder. These are things I have to live with for the rest of my life. It's hard for me to trust anyone because the people who were supposed to protect me most failed me miserably.

Tr. 27-30.

{¶ 22} The defense made a compelling presentation for leniency under the circumstances. Counsel emphasized the lack of recidivism factors and that, without minimizing his behavior, Roberts has been a law-abiding citizen for most of his adult life. Roberts's son addressed the trial court regarding his father's positive impact on his life, stating he had been his protector, teacher, and mentor and was the reason he had completed school and was gainfully employed.

{¶ 23} His son added:

I'd like to view myself as a man of character and I understand that men of character don't behave like that but I do also understand this: A man of character understands when he has done something wrong and he has apologized. He understands what happened was very wrong and I also believe that I understand what was wrong.

I believe that personally he has already endured punishment for what's happened. Just understanding that this happened to your own child, even in my case understanding what happened to my sisters, these are my family, and — I mean, people use the term step-sisters and whatever. I mean, I understand that's for official statement but I view them as my own sisters and brother, all of them.

Tr. 33.

{¶ 24} Roberts addressed the trial court, stating in part:

First, your Honor, I'd just like to say that I'm here because of my own actions. I don't blame anybody for that.

I do know and I heard [what was] said today about my lord and savior and that's one thing that I do take very seriously. I know I let him down. I know I wasn't raised that way by my mom. I know I let my wife down as well. I let my family down. That has haunted me for years.

What I have seen over these last couple of months has hurt me even more than any of the things that have haunted me over this time because I see my family warring amongst themselves and that's not any way for a Christian to behave. I know I've talked with my pastor at length about it and the one thing that my pastor said which was left out is the word "grace."

. . .

Like I say, I have a job. I'm employed. I haven't been in trouble. I don't — I'm not the type of person to put myself in situations like that after what has happened. I just go to work, go to church, shop, maybe I take people from my church to go shopping themselves. We have some friends like that. That's pretty much it.

Tr. 39-40.

The trial court was advised that Roberts's mother and wife were also present in support.

{¶ 25} The trial court gave due consideration to the mitigating and aggravated factors. Under 2929.12(B), the trial court considered the seriousness of Roberts's conduct:

> I do find that the injury was exacerbated by the victims', plural, physical age, and probably mental condition since they were young at the time of the offenses. I do find that the victims suffered serious physical harm, psychological harm in this case.

> I do find that the offender's relationship with the victim facilitated the offense. I do consider these domestic assault cases. The offender in this case was the step-parent or custodian of the victims, that the victims in this case were family and household members.

Tr. 41.

{¶ 26} The trial court did not find that the victims facilitated the offense, the offender acted under strong provocation, the offender did not cause or expect to cause physical harm to persons or property, or that substantial grounds exist to mitigate the offender's conduct. Also considered were whether recidivism was more likely under R.C. 2929.12(D). Roberts was not on bail awaiting sentencing or subject to community-control sanctions, had no history of criminal convictions or of responding unfavorably to sanctions, and had no pattern of drug or alcohol abuse. On the issue of exhibiting genuine remorse, the trial court stated, "I do find that the offender in this case at least acknowledges what he did to these two girls, women now." Tr. 42-43.

{¶ 27} Under whether recidivism is less likely under R.C. 2929.12(E), the trial court observed there were no prior juvenile delinquency adjudications or adult conviction, and it appeared that Roberts had otherwise led a law-abiding life for a significant number of years. The trial court stated:

> Whether offenses were committed under circumstances unlikely to reoccur, you know, that's hard to predict into the future.
>
> Whether the defendant shows genuine remorse: As I indicated, the defendant has taken responsibility, not just by the plea in this case but by his own words.

Tr. 43.

{¶ 28} The trial court then balanced "the conduct and its seriousness with the less seriousness and the conduct, and whether or not recidivism is likely or less likely and then make a decision." Tr. 43-44. The presumption in Count 1, the fourth-degree GSI, was probation. Because of the age of the victim in Count 4, the third-degree GSI, prison in the range of one to five years was presumed.

{¶ 29} The trial court held:

> In this case, taking everything into consideration in my job to protect the public and punish the offender, in looking at all of the relevant factors that I've already identified, I cannot overcome the presumption. You will serve a prison sentence.
>
> . . .
>
> I do find that because there were two children involved in this that is — that factor weighs in favor of a more lengthy prison sentence. The fact of their age weighs in favor of a more lengthy prison sentence.
>
> Count 1, 18 months.
>
> Count 4, 5 years.

Counts 1 and 4 are to run concurrent.

Tr. 44-45.

**{¶ 30}** The sentencing entry provides "[t]he court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11."

**{¶ 31}** Based on the trial court's statements and the record before us, we are persuaded that the trial court was aware of all the mitigation evidence presented at the sentencing hearing. Further, the court's statements during the sentence hearing and in the journal entry demonstrate that the court considered the required factors. *See Pettigrew*, 2023-Ohio-3877, at ¶ 11 (8th Dist.).

**{¶ 32}** Pursuant to the Ohio Supreme Court's guidance concerning appellate review of R.C. 2929.11 and 2929.12 in *Jones*, 2020-Ohio-6729, ¶ 18, 19, we cannot say that Roberts has clearly and convincingly demonstrated that his sentence was contrary to law. Roberts's sentence is within the statutory range permitted for the offenses that he pled guilty to, and the trial court considered the principles and purposes of felony sentencing under R.C. 2929.11.

**{¶ 33}** Roberts's assignment of error is overruled.

**{¶ 34}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having

been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, A.J., and
LISA B. FORBES, J., CONCUR