[Cite as *State v. Clark*, 2017-Ohio-8226.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105047**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WAYNE CLARKE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-601725-A and CR-16-605861-A

**BEFORE:** Keough, A.J., E.T. Gallagher, J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 19, 2017

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Eben McNair
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Defendant-appellant, Wayne Clarke ("Clarke"), appeals from the trial court's judgment, rendered after his guilty plea, finding him guilty of felonious assault, domestic violence, endangering children, and intimidation of a crime victim, and sentencing him to eight and a half years in prison. Clarke contends that his guilty plea was not knowingly, voluntarily, and intelligently made; he was denied his constitutional right to effective assistance of counsel; and the trial court erred at sentencing by not merging allied offenses and not making the necessary findings to impose consecutive sentences. Finding no merit to the appeal, we affirm.

## I. Background

**{¶2}** In December 2015, Clarke was indicted in Case No. CR-15-601725-A on two counts of felonious assault, one count of abduction, and one count of domestic violence against B.L., his girlfriend. B.L. cooperated with the prosecutor until Clark made bond and was released from jail; at that point, B.L. stopped responding to the prosecutor's calls and could not be located.

**{¶3}** On April 20, 2016, the morning of trial, the state asked for a continuance because B.L. was not present to testify. The court granted the state's request for a continuance and issued a material witness warrant for B.L. She was finally located on April 28, 2016, and fitted with a GPS ankle bracelet for her own safety.

**{¶4}** In May 2016, Clarke was indicted in Case No. CR-16-605861-A and charged with intimidation of a crime victim or witness, two counts of kidnapping, two

counts of felonious assault, two counts of domestic violence, one count of endangering children, and one count of aggravated menacing. The victims were B.L. and her six-year-old daughter; the offenses occurred from April 18, 2016, shortly before the first trial date, through April 28, 2016, when Clarke was apprehended in B.L.'s company.

**{¶5}** B.L.'s ankle bracelet was removed in June 2016 after Clarke's bond was revoked for violating a no-contact order issued in Case No. CR-15-601725-A and he was jailed.

**{¶6}** On September 8, 2016, Clarke entered into a plea agreement with the state on both cases. Clarke appeared at the plea hearing with separate counsel for each case. After the prosecutor explained the proposed plea agreement, the trial judge told Clarke, "if you have any questions at any time throughout these proceedings, please do not hesitate to let me know because I will give you the opportunity to speak with your lawyers." Clarke then asked to speak with his lawyers, and the proceedings paused while he did so.

**{¶7}** When the proceedings resumed, the judge asked Clarke questions relating to his age, education, citizenship, and use of medication, and whether he was entering into the plea voluntarily. The judge then asked Clarke, "Have you had enough time with your two lawyers?" Clarke responded, "Honestly, no." The following colloquy then ensued:

> THE COURT: Honestly, no. All right. Stating that you haven't had enough time with your lawyers, are you prepared to go forward with this plea? We're set for trial on Monday.

> THE DEFENDANT: You can go ahead with it.

THE COURT: Well, I just want to make sure that you are voluntarily entering into this plea. Are you doing that? Because my concern is that you told me you haven't had enough time with your lawyer. You have two lawyers, two separate cases. I know that they spent probably at least an hour or more with you in the holding cell. Is that correct, Mr. Johnson?

MR. JOHNSON: Give or take, Judge.

THE COURT: Is that correct, Mr. Stefan?

MR. STEFAN: Yes. We were there this morning for a significant period of time.

THE COURT: Did you discuss the cases and the potential plea with them?

THE DEFENDANT: Yes. We could just continue it, your Honor.

THE COURT: Okay. Are you sure?

THE DEFENDANT: I'm positive.

(Tr. 28-29.)

**{¶8}** The judge then asked Clarke whether he understood the allegations against him, that by pleading guilty he would be admitting that he committed the offenses, and that after his plea, the court could find him guilty and proceed to sentence him. Clarke responded affirmatively to each question. The trial court then told Clarke that it would explain his constitutional rights to him, and advised him, "Again, do not hesitate to let me know if you have any questions, okay?" (Tr. 30.) Clarke responded affirmatively.

**{¶9}** The trial court then explained the constitutional rights Clarke would be waiving by pleading guilty. Clarke affirmed that he understood these rights and his waiver of them. Clarke then asked the judge, "May I have a word?" and the proceedings

again paused while he consulted with his lawyers.  (Tr. 33.) When he was done talking with them, Clarke told the judge, "We may proceed, Your Honor."  (Tr. 33.)

{¶10} The judge then explained the counts Clarke would be pleading guilty to in both cases, and the potential penalties for each count.   After each count and its possible penalties were explained to Clarke, the judge asked him if he understood, and Clarke responded affirmatively.   The judge then asked Clarke:

> THE COURT:   Now, Mr. Clarke, do you understand the penalties you face by entering a guilty plea?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   Do you have any questions about the penalties you face?
>
> THE DEFENDANT:   No.
>
> THE COURT:   Do you have any questions about these proceedings?
>
> THE DEFENDANT:   No.

(Tr. 38-39.)

{¶11} Clarke then pleaded guilty in Case No. CR-15-601725-A to Count 1 as amended to domestic violence with a furthermore clause that he had previously pleaded guilty to domestic violence, and to Count 4, domestic violence with the same furthermore clause.   In Case No. CR-16-605861-A, Clarke pleaded guilty to Count 1, intimidation of a crime victim; Count 4, felonious assault; Count 7, domestic violence; and Count 8, endangering children.   The court accepted Clarke's guilty pleas, entered a finding of guilt as to each count, and nolled the remaining counts.

**{¶12}** After a brief pause, the court proceeded to sentencing. Clarke's lawyer in Case No. CR-15-601725-A spoke in mitigation on his behalf, and Clarke apologized "for the situation." With respect to Case No. CR-16-605861-A, Clarke's lawyer asked the court not to hold Clarke's hesitation in the proceedings against him because "today was the first day he was made aware of both these plea arrangements and he willingly accepted them. There's been no resistance." (Tr. 44.) Clarke then apologized to the court and to B.L., stating, "I made a mistake. Just want to get it over with and try to be the best man I can and for my children." (Tr. 45.)

**{¶13}** B.L. then informed the court that she has permanent scars on her neck and back as a result of the incidents. She said that Clarke had choked her twice until she was unconscious, and that she still had knots in her face as a result of Clarke punching her in April. She also said that Clark had threatened her and made her afraid to testify.

**{¶14}** The prosecutor then informed the court that the state's position was that none of the offenses merged for sentencing. With respect to Case No. CR-15-601725-A, the prosecutor explained that the domestic violence charges related to the two separate choking incidents identified by B.L. With respect to Case No. CR-16-605861-A, the prosecutor explained that Count 1, intimidation of a crime victim or witness, occurred over a ten-day period from April 18, 2016, until April 28, 2016, when B.L. was located; Count 4, felonious assault, occurred on April 18, 2016; Count 7, domestic violence, occurred on April 27, 2016; and Count 8, endangering children, was a misdemeanor that

would not merge with the felony offenses. Upon questioning by the court, B.L. confirmed that Counts 4 and 7 were separate incidents involving punches to her face.

{¶15} The court then stated that based upon the prosecutor's representations and the law, its position was that none of the counts would merge. Both defense counsel concurred on the record with the trial court.

{¶16} The court then sentenced Clarke in Case No. CR-15-601725-A to 18 months incarceration on Count 1 consecutive to 18 months on Count 4. In Case No. CR-16-605861-A, the court sentenced Clarke to 12 months on Count 1, three years on Count 4, 18 months on Count 7, and six months on Count 8. With the exception of Count 8, the court ordered all counts in Case No. CR-16-605861-A to be served consecutive to each other, and the sentence in Case No. CR-15-601725-A to be served consecutive to that imposed in Case No. CR-16-605861-A, for an aggregate sentence of eight and a half years.

{¶17} Immediately after sentencing, Clarke told the court that he wanted a chance to speak. The judge denied Clarke's request, telling him that he had been given a chance to speak before she imposed the sentence. Clarke then told the court that he "wanted to try to speak about me getting new counsel because I — this is the first day we came up here, first day we talked about this case, and I've been sentenced to nine years." The judge again denied Clarke's request, telling him that she had given him "every opportunity" during the plea hearing to consult with his lawyers and to speak, and had asked him if he needed more time.

**{¶18}** At a hearing several days later to correct the sentence on Count 7,[1] Clarke told the judge that he "want[ed] to speak about what had taken place last week" because at that time, he had "asked to come upstairs with all thoughts of getting new counsel." The judge denied Clarke's request, informing him that he had been given ample time to consult with his lawyers and had objected only after she had sentenced him. This appeal followed.

## II. Analysis

### A. The Guilty Plea

**{¶19}** A guilty plea that is not knowing, intelligent, and voluntary violates the Ohio and United States Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). It is the trial court's duty, therefore, to ensure that a defendant "has a full understanding of what the plea connotes and of its consequences." *Id.*

**{¶20}** To effectuate this constitutional mandate, a trial court shall not accept a guilty plea in a felony case without first addressing the defendant personally and (1) determining that the defendant is making the plea voluntarily, and understands the nature of the charges and the maximum penalty involved, (2) informing the defendant of and determining that the defendant understands the effects of the plea, and that upon acceptance of the plea, the court may proceed with judgment and sentence, (3) informing the defendant and determining that the defendant understands that by pleading guilty, he

---

[1] The court initially sentenced Clarke to 24 months incarceration on Count 7; at the subsequent hearing, it corrected the sentence to 18 months in prison, the statutory maximum sentence for the offense.

is waiving his rights to a jury trial, to call and confront witnesses, and to require the state to prove his guilt beyond a reasonable doubt.   Crim.R. 11(C).

**{¶21}** In his first assignment of error, Clarke contends that the trial court erred in accepting his guilty plea because it was not knowingly, voluntarily, and intelligently made.   He asserts that his plea should be vacated to correct a "manifest injustice" because he was not given sufficient time to consult with his lawyers, especially because he had just been informed of the plea offer in both cases that day.   In considering whether a plea was entered knowingly, intelligently, and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record."   *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7.

**{¶22}** We find no merit whatsoever to Clarke's assertion that his guilty plea was not made knowingly, voluntarily, and intelligently.   The record reflects that the trial court conducted an extensive colloquy with Clarke and complied with every aspect of Crim.R. 11(C).   The judge repeatedly confirmed that Clarke understood the charges to which he would be pleading guilty and the penalties he faced, the constitutional rights he would waive by pleading guilty, and that upon accepting his plea, the court could proceed to judgment and sentencing.   The record also reflects that the trial court repeatedly asked Clarke if he had any questions about the charges, the possible penalties, and the plea hearing procedure, and whether he needed more time to consult with his lawyers.

**{¶23}** Nor do we find any merit to Clarke's assertion that his guilty plea should be vacated to correct a "manifest injustice" because he did not have sufficient time to consult

with his lawyers before entering his plea.  A "manifest injustice" has been defined as a "clear or openly unjust act."  *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998).  As discussed above, the record reflects that the trial court gave Clarke every opportunity to consult with his lawyers during the plea hearing.   And when Clarke initially told the court that "honestly, no," he had not had enough time to consult with his lawyers, the court specifically asked him if he wanted to go forward with the plea.  When Clarke told the judge he would continue, the judge asked him, "are you sure?" and Clarke responded, "I'm positive."  We find nothing clearly or openly unjust about the trial court's proceeding with the plea hearing after Clarke assured the court several times that he wanted to continue.   Rather, Clarke's assertion that his plea was not made knowingly, voluntarily, and intelligently appears to be nothing more than a change of heart after the court imposed a longer than expected eight and a half year prison sentence.

{¶24} Postsentence motions to withdraw a guilty plea are granted only in extraordinary cases.  *State v. Kongkeo*, 8th Dist. Cuyahoga No. 96691, 2012-Ohio-356, ¶ 2, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977).  This is not the extraordinary case involving a clear or openly unjust act that would warrant vacating the guilty plea.   The first assignment of error is therefore overruled.

## B.    Allied Offenses

{¶25} In his second assignment of error, Clarke contends that the trial court committed reversible error by not merging Counts 1, 4, and 7 (intimidation of a crime

victim or witness, felonious assault, and domestic violence respectively) in Case No. CR-16-605861-A as allied offenses.

**{¶26}** Under R.C. 2941.25, Ohio's multicount statute, where the defendant's conduct constitutes two or more allied offenses of similar import, the defendant may be convicted of only one offense. R.C. 2941.25(A). A defendant charged with multiple offenses may be convicted of all the offenses, however, if (1) the defendant's conduct constitutes offenses of dissimilar import, *i.e.*, each offense caused separate identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivation. R.C. 2941.25(B); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13. Thus, to determine whether offenses are allied, courts must consider the defendant's conduct, the animus, and the import. *Id.* at paragraph one of the syllabus.

**{¶27}** Clarke failed to raise an allied-offenses argument before the trial court and did not request that Counts 1, 4, and 7 be merged at sentencing. In fact, counsel specifically conceded at sentencing that the offenses were not allied. This court has previously held that even where the plea agreement is silent regarding whether multiple offenses are allied, where the transcript demonstrates that the state and defense counsel agreed that offenses, were not allied, the issue of allied offenses is waived. *See State v. Black*, 8th Dist Cuyahoga No. 102587, 2016-Ohio-383, ¶ 18, and cases cited therein. Other districts have held that where the stipulation to allied offenses was not included in the plea agreement, counsel's agreement at sentencing that the offenses were not allied

was not a waiver, i.e., an intentional relinquishment of a known right, but rather a forfeiture of the allied-offenses argument, *i.e.*, the failure to timely assert a right or object to an error. *State v. Allen*, First Dist. Hamilton No. C-150769, 2016-Ohio-5258, ¶ 9-10, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20-21.

{¶28} Under either standard, Clarke's allied-offenses argument has no merit. The transcript clearly reflects that defense counsel agreed that the offenses were not allied offenses and would not merge for sentencing. Accordingly, Clarke waived the allied-offense issue.

{¶29} Furthermore, even if counsel's agreement on the record at sentencing was insufficient to establish a waiver of the allied-offense issue, by failing to seek the merger of alleged allied offenses before the trial court, Clarke forfeited the right to assert an allied-offense argument on appeal except to the extent it constitutes plain error. *Rogers* at ¶ 21-22; *Black* at ¶ 19.

{¶30} Plain error is that which affects the outcome of the proceedings. *Rogers* at ¶ 22, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. It should only be found in exceptional circumstances and to prevent a miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990). To demonstrate plain error regarding the failure to merge alleged allied offenses, "an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Rogers* at ¶ 3.

**{¶31}** Clarke cannot make that showing because all the offenses occurred on separate occasions. Count 1, intimidation of a victim or witness, occurred over ten days, from April 18, 2016 to April 28, 2016, when, according to B.L., Clarke threatened her and made her afraid to testify. Count 4, felonious assault, occurred on April 18, 2016, when Clarke hit B.L. in the face, and Count 7, domestic violence, occurred on April 27, 2016, when Clarke again punched B.L. in the face. Because the offenses were committed separately, they are not allied offenses, and the trial court did not err in not merging them for sentencing. The second assignment of error is therefore overruled.

## C. Ineffective Assistance of Counsel

**{¶32}** Clarke next contends that his counsel was ineffective for not raising the issue of allied offenses at sentencing.

**{¶33}** A defendant claiming ineffective assistance of counsel must establish that (1) counsel's performance fell below objective standards for reasonably effective representation, and (2) counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶34}** Because, as discussed above, the offenses occurred on separate occasions and thus were not allied offenses, it is apparent that counsel was not ineffective for not raising the allied-offenses issue in the trial court. The third assignment of error is therefore overruled.

## D. Consecutive Sentences

**{¶35}** In his fourth assignment of error, Clarke contends that the trial court erred in imposing consecutive sentences.

**{¶36}** Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition, the court must find that any of the following applies:

> (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;

> (2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

> (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶37}** In order to impose consecutive sentences, the trial court must both make the statutory findings mandated under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus.

**{¶38}** Clarke concedes that the trial court made the appropriate findings at the sentencing hearing, and the journal entry of sentencing reflects those findings. Accordingly, this assignment of error is without merit and overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR