[Cite as *State v. Jenkins*, 2025-Ohio-2143.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                     :

    Plaintiff-Appellee,          :

                             No. 114022

    v.                           :

LASHAWN JENKINS,                   :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
              AND REMANDED
**RELEASED AND JOURNALIZED:** June 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-687734-A and CR-23-687782-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mason McCarthy, Assistant Prosecuting Attorney, *for appellee.*

Berkman, Gordon, Murray & DeVan and William C. Livingston, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant LaShawn Jenkins ("Jenkins") appeals the sentences imposed by the Cuyahoga County Court of Common Pleas in two criminal cases resulting in an aggregate sentence of 14 to 19.5 years of imprisonment. We

affirm in part, reverse in part, and remand for resentencing pursuant to this opinion.

## I.   Background and Facts

{¶ 2}   Jenkins, who was bound over from the juvenile court for offenses committed shortly after reaching the age of 16 years, entered guilty pleas in *State v. Jenkins,* Cuyahoga C.P. No. CR-23-687734-A ("CR-23-687734"), and *State v. Jenkins*, Cuyahoga C.P. No. CR-23-687782-A ("CR-23-687782").[1]

### A. CR-23-687782

{¶ 3}   In CR-23-687782 on December 19, 2022, a car containing Jenkins and another male bumped another vehicle, robbed the female victim N.L. of her keys at gunpoint when she exited to check the damage, and stole the vehicle. The vehicle was recovered two days later and contained Jenkins's fingerprints. On December 20, 2020, a similar bump and robbery took place involving male victim T.M. Also on that date, another stolen vehicle was recovered that contained Jenkins's fingerprints.

---

[1] Where a juvenile court determines that a child, who is 16 or 17 years of age at the time of the act, has committed a category-two offense, e.g., aggravated robbery in violation of R.C. 2911.01, the court is required to bindover the child to adult court if

(a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.

b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

R.C. 2152.10(A)(2)(a) and (b); R.C. 2152.12(A)(1)(b)(i) and (ii). "Mandatory transfer . . . removes discretion from judges and requires the transfer of a juvenile to adult court in certain situations." *State v. Nicholas,* 2022-Ohio-4276, ¶ 3.

**{¶ 4}** On April 15, 2024, Jenkins pleaded guilty to the following:

Amended Count 1, aggravated robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony, with a one-year firearm specification.

Amended Count 5, grand theft of a motor vehicle, in violation of R.C. 2913.02(A)(1), a fourth-degree felony.

Count 6 as charged, criminal damaging, in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor.

Amended Count 7, attempted receiving stolen property, in violation of R.C. 2913.51(A), a fifth-degree felony.

Amended Count 9, robbery, in violation of R.C. 2911.02(A)(1), a second-degree felony, with a 1-year firearm specification.

Amended Count 12, attempted grand theft of a motor vehicle, in violation of R.C. 2923.02/R.C. 2913.02, a felony of the fifth degree.

Count 13 as charged, criminal damaging, in violation of R.C. 2909.06, a second-degree misdemeanor.

The remaining charges were dismissed.

**{¶ 5}** Jenkins was sentenced as follows:

The court imposes a mandatory prison term of 2 year(s) on the 2 — 1 year firearm specifications for Count 1 and Count 9 specification(s) to be served prior to and consecutive to a minimum prison term/aggregate prison term of 6 year(s) and a maximum prison term of 9 year(s) on the underlying offense(s).

The total stated prison term is 8 to 11 years in prison for this case, to be run consecutively to Case 687734 at the Lorain Correctional Institution.

The court sentences on each count as follows:

The court has notified the defendant that pursuant to R.C. 2929.19(B)(2)(C):

Offender is eligible for earned reduction of 5 to 15 percent of the minimum prison term imposed for exceptional conduct while incarcerated or adjustment to incarceration.

Count(s) 5 merge[s] into Count 1. State elects to proceed as to Count 1, F[elony] 1: a prison term of SB201 sentence imposed, 1 year(s) mandatory prison on the 1 year firearm . . . specification(s) to be served prior to and consecutive to 3 year(s) and a maximum 4.5 year(s) on the base charge, to be run consecutive with Count 9 and consecutive with Case 687734; a mandatory minimum 2 years, up to a maximum of 5 years post release control.

Count 6: M[isdemeanor] 2, 90 day(s), to be run concurrent with all counts and concurrent to Case 687734.

Count 7: F[elony] 5, 6 month(s), to be run concurrent will all counts and concurrent to Case 687734; up to 2 years of P[ost] R[elease] C[ontrol] at the discretion of the Parole Board.

Count(s) 12 merge[s] into Count 9. State elects to proceed as to Count 9, F[elony] 2: 1 year(s) mandatory prison on the 1-year firearm . . . specification(s) to be served prior to and consecutive to 3 year(s) on the base charge, on Count 9: SB201 sentence. Defendant to serve a minimum prison term of 3 years with an indefinite prison term of 1.5 years, for a stated prison term of 4 to 5.5 years.; a mandatory minimum 18 months, up to a maximum of 3 years post release control.

Count 13: M[isdemeanor] 2, 90 day(s), to be run concurrent to all counts and concurrent with Case 687734. Defendant is sentenced on Cases 687734 and 687782 to serve a minimum prison term of 14 years with an indefinite prison term of 5.5 years, for a maximum prison term of 19.5 years.

The total stated prison term for Cases 687734 and 687782 is 14 to 19.5 years[.]

Journal Entry No. 181671214, p. 2-3 (May 13, 2024).

## B. CR-23-687734

{¶ 6} On January 17, 2023, in CR-23-687734, male victim F.S., over 70 years of age, heard the sound of breaking glass, saw two males attempting to steal

his truck, and yelled at them to get away from his vehicle. The victim claimed to see a muzzle flash come from inside the vehicle and he returned fire. Jenkins and a gun were located inside the vehicle. Jenkins was shot in his right eye, transported to the hospital and lost total vision in the eye.

{¶ 7} On April 15, 2024, Jenkins pleaded guilty to the following:

Amended Count 1, aggravated robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony, with a one-year firearm specification.

Amended Count 6, felonious assault, in violation of R.C. 2903.11(A)(2), a second-degree felony.

Count 7, as charged, having weapons while under disability, a third-degree felony.

Amended Count 8, attempted grand theft of a motor vehicle, a fifth-degree felony.

The remaining charges were dismissed.

{¶ 8} Jenkins was sentenced as follows:

The court imposes a mandatory prison term of 1 year(s) on the 1-year firearm specification specification(s) to be served prior to and consecutive to a minimum prison term/aggregate prison term of 5 year(s) and a maximum prison term of 7.5 year(s) on the underlying offense(s). The total stated prison term is 6 to 8.5 years in prison for this case, to be run consecutive to case 687782 at the Lorain Correctional Institution.

The court sentences on each count as follows:

The court has notified the defendant that pursuant to R.C. 2929.19(B)(2)(c):

Offender is eligible for earned reduction of 5 to 15 percent of the minimum prison term imposed for exceptional conduct while incarcerated or adjustment to incarceration.

Count(s) 6 merge[s] into Count 1. State elects to proceed as to Count 1, F[elony] 1: a prison term of SB201 sentence imposed, 1 year(s) mandatory prison on the 1 year firearm specification to be served prior to and consecutive to 5 year(s) and a maximum 7.5 year(s) on the base charge, the total stated prison term for this count is 6 to 8.5 years; a mandatory minimum 2 years, up to a maximum of 5 years post release control.

Count 7: F[elony] 3, 36 month(s), to be run concurrent with all counts and concurrent with Case 687782; up to 2 years of P[ost] R[elease] C[ontrol] at the discretion of the parole board.

Count 8: F[elony] 5, 6 month(s), to be run concurrent with all counts and concurrent with Case 687782; up to 2 years of P[ost] R[elease] C[ontrol] at the discretion of the Parole Board.

Defendant is sentenced on Cases 687734 and 687782 to serve a minimum prison term of 14 years with an indefinite prison term of 5.5 years, for a maximum prison term of 19.5 years[.]

The total stated prison term for Cases 687734 and 687782 is 14 to 19.5 years.

Journal Entry No. 181673117, p. 2. (May 13, 2024).

{¶ 9} Jenkins appeals.

## II. Assignments of Error

I. Appellant's sentence is contrary to law because it exceeds the maximum sentence that is permitted by law.

II. The trial court erred in imposing consecutive sentences.

III. The trial court erred in failing to merge count eight, attempted grand theft, with count one, aggravated robbery, in Case No. 23-CR-687734.

## III. Standard of Review

{¶ 10} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1, 21. Under the statute, an appellate court may increase, reduce, modify, or vacate and remand a challenged

felony sentence if the court clearly and convincingly finds either that the record does not support the sentencing court's findings as required by relevant sentencing statutes or the sentence is otherwise contrary to law.

{¶ 11} A sentence is contrary to law if it falls outside of the statutory range for the offense or if the sentencing court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Pawlak*, 2016-Ohio-5926, ¶ 58 (8th Dist.). Conversely, if the sentence is within the statutory range for the offense and the trial court considered both the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, the court's imposition of any prison term for a felony conviction is not contrary to law. *State v. Woodard*, 2018-Ohio-2402, ¶ 35 (8th Dist.). *See also State v. Clay*, 2020-Ohio-1499, ¶ 26 (8th Dist.), citing *Pawlak* at ¶ 58.

### A. Contrary to Law — Maximum Term

{¶ 12} Jenkins argues that the maximum term of 19.5 years is contrary to law under R.C. 2929.144 governing maximum prison term calculations including under what is known as the Reagan Tokes Law and quotes the following:

> (B) The court imposing a prison term on an offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree shall determine the maximum prison term that is part of the sentence in accordance with the following:
>
> . . .
>
> (2) If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second

degree, [and] if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

(Emphasis added.)  R.C. 2929.144(B).

{¶ 13}  Jenkins presents the following calculations in support of his position:

In Case No. 687734, the minimum term is derived from Count One and its firearm specification, which were run consecutively, and equals 6 years:

| Case No. 23-687334 | Degree of Offense | Min/Def Term |
|---|---|---|
| Count 1 | F-1 qualifying | 5 |
| Count 1 spec | firearm specification | 1 |
| Aggregate minimum term: | | 6 years (5+1) |

In Case No. 687782, the minimum term is derived from Counts One and Nine, and their firearm specifications, which were all run consecutively, and equals 8 years:

| Case No. 23-687782 | Degree of Offense | Min/Def Term |
|---|---|---|
| Count 1 | F-1 qualifying | 3 years |
| Count 1 spec | firearm specification | 1 year |
| Count 9 | F-2 qualifying | 3 years |
| Count 9 spec | firearm specification | 1 year |
| Aggregate minimum term: | | 8 years (3+1+3+1) |

R.C. 2929.144 then requires the trial court to determine the maximum sentence by taking the aggregate minimum term plus fifty percent of the longest minimum term for the most serious felony.

In Case No. 687734, that calculation is as follows:

| Case No. CR-23-687734 Aggregate Minimum: | 50 % of the longest minimum term from the most serious felony | Maximum Sentence |
|---|---|---|
| 6 years | 2.5 years (½ of 5-year sentence on Count 1) | 8.5 years (6+2.5) |

Thus, the sentence in this case is a minimum of 6 years to a maximum of 8.5 years. The court calculated that sentence correctly. *See* Case No. CR-23-687734, May 13, 2024, Judgment Entry.

In Case No. 687782, the calculation is as follows:

| Case No. CR-23-687782 Aggregate Minimum: | 50 % of the longest minimum term from the most serious felony | Maximum Sentence |
|---|---|---|
| 8 years | 1.5 years (½ of 3-year sentence on Count 1) | 9.5 years (8+1.5) |

Thus, the sentence in this case amounts to a minimum of 8 years to a maximum of 9.5 years.

Appellant's brief at p. 12-13.

{¶ 14} Jenkins concludes that, based on the foregoing calculations, he should have received an indefinite sentence of 2.5 years, resulting in a total aggregate sentence of 14 to 16.5 years. The State agrees that running the indefinite sentences consecutive to each other for a total indefinite sentence of 5.5 years was in error and the indefinite sentence should have been 2.5 years resulting in a total aggregate sentence of 14 to 16.5 years. Thus, the parties concur that the case should be remanded for the limited purpose of correcting the indefinite sentence.

{¶ 15} We find that the error has merit. The first assignment of error is sustained, the sentence is vacated, and the case is remanded for the limited purpose of imposing the correct indefinite sentence.

**B. Consecutive Sentences**

{¶ 16} Jenkins contends that the offenses occurred shortly after his 16th birthday and the imposition of consecutive sentences on the three counts is disproportionate and unnecessary under R.C. 2929.14(C)(4). We affirm the trial court's judgment.

{¶ 17} It is axiomatic that a trial court may only impose sentences provided by statute. The consecutive-sentence provisions of R.C. 2929.14(C)(4) is an exception to the R.C. 2929.14(A) directive that multiple offenses "shall be served concurrently." *State v. Jones*, 2022-Ohio-4202, ¶ 18-19 (8th Dist.), citing *State v. Williams*, 2016-Ohio-7658, ¶ 22, citing *State v. Fischer*, 2010-Ohio-6238, ¶ 21-22.

{¶ 18} R.C. 2953.08(G)(2) provides that when reviewing felony sentences, an appellate court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶ 19} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 20} "'The [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999). The reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 2015-Ohio-4501, ¶ 21 (8th Dist.), citing *Bonnell* at ¶ 29. A trial court is not required to state its reasons to support its findings, nor is it required to precisely recite the statutory language, "provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶ 21} The trial court stated on the record:

Now, the aggravated robbery in Case 687782 [Count 1] for [victim N.L.], as well as the robbery on that case number for Count Number 9 against victim, [T.M.], as well as the aggravated robbery, Count Number 1, in Case Number 687734 for the victim, [F.S.], will be run concurrently [sic].[2]

The Court imposes prison terms consecutively, finding that consecutive service is necessary to protect the public from future crime or to punish the Defendant, that the consecutive sentences are not disproportionate

---

[2] The next sentence in the record correctly states that the prison terms were being imposed "consecutively" and the imposition of consecutive terms is also accurately stated in the sentencing entries.

to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public, and that at least two of the multiple offenses were committed in this case or cases as part of one or more courses of conduct.

And the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct.

That's the finding from Ohio Revised Code 2929.14(C)(4)[(a)] . . . which the Court determines and finds here.

The Court also finds consecutive sentences are all of these counts mentioned here for the aggravated robbery, robbery and aggravated robbery.

Pursuant to Ohio Revised Code 2929.14(C)(4)([c]) the Court imposes prison terms consecutively, finding that consecutive service is necessary to protect the public from future crime or to punish the Defendant, that the consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public, and that Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

Tr. 105-107.

{¶ 22} The sentencing entries include the following pursuant to

R.C. 2929.14(C)(4):

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

{¶ 23} We focus on Jenkins's claim that the imposition of consecutive sentences was disproportionate and unnecessary under R.C. 2929.14(C)(4), particularly where Jenkins had just turned 16 years old close to the time of the acts and suffered the loss of his eye after being shot by a victim. Jenkins also asks that we consider the impact of the aggregate consecutive sentences as a bound over juvenile offender and reminds this court of the data demonstrating that juvenile brains do not fully develop until the age of 25 years, their lack of maturity, undeveloped sense of responsibility, and vulnerability to peer pressure and outside influences. *See Roper v. Simmons*, 543 U.S. 551, 569-570 (2005).[3]

{¶ 24} This court is cognizant of the concerns involving long-term imprisonment for juveniles resulting from aggregate consecutive sentences. *See, e.g.,* this court's decision in *State v. Hayes*, 2024-Ohio-845 (8th Dist.), where the defendant was 18 and 19 years of age when the acts were committed, had an IQ of 72, developmental disabilities and several mental-health diagnoses. Evidence included the widely known data regarding juvenile brain development cited by

---

[3] Children in adult prisons, though separated from adult inmates by sight and sound until the age of 18, are still vulnerable to physical assaults and are five times more likely to be sexually assaulted, usually within the first 48 hours of being incarcerated. At the age of 18, the youth are often mixed with the adults. Frequently placed in isolation due to safety concerns, the "'higher rate of sexual and physical assault, coupled with isolation, impacts the still-developing brain of a child.'" *State v Jones*, 2022-Ohio-4202, ¶ 34 (8th Dist.), quoting State Representatives Brian Stewart and Brian Lampton, *House Bill 500 Sponsor Testimony*, 134th General Assembly Regular Session, 2021-2022. The bill has remained in committee since December 7, 2021. Tragically, "'combined with what is often a history of childhood trauma and abuse . . . children bound over to adult prison are. . . 36 times more likely to commit suicide.'" *Id.*, quoting *House Bill 500 Sponsor Testimony*.

Jenkins. The trial court imposed maximum consecutive sentences on all counts except for one, totaling 71 and one-half years because of what the trial court described as Hayes's heinous conduct. The sum included 11 years of firearm specifications.

{¶ 25} This court determined that the record clearly and convincingly did not support the lower court's proportionality finding under R.C. 2929.14(C)(4) as applied to the consecutive sentences imposed and clearly exceeded what was necessary to protect the public and punish Hayes. Consequently, the sentence was modified.

> This court agrees that Hayes should be punished, and this court does not demean the impact on the victims for the loss of a beloved family member when Hayes lost control of the vehicle attempting to avoid deployed stop sticks. However, the record clearly and convincingly does not support Hayes's permanent removal from society. The consecutive sentences imposed in this case clearly exceed what is necessary to protect the public and punish Hayes for his conduct. But more importantly, the consecutive sentences imposed are plainly disproportionate to Hayes's conduct and the danger he poses.

*Id.* at ¶ 25.

{¶ 26} In the instant case, Jenkins had multiple charges, the majority of which were sentenced to run concurrently. The parties have already agreed as confirmed by this court under the first assignment of error that the original aggregate sentence of 14 to 19.5 years was in error and should have been a total aggregate sentence of 14 to 16.5 years.

{¶ 27} Unlike the situation in *Hayes*, Jenkins was not sentenced to the maximum terms for any of the three counts imposed consecutively. The aggravated-

robbery counts in CR-23-687734 and CR-23-687782 carried a possible minimum sentence of three to 11 years. Jenkins was sentenced to a five-year minimum and 7.5-year maximum on the former and a three-year minimum and 4.5-year maximum on the latter. The robbery count in CR-23-687782 carried a possible two to eight-year minimum and a maximum of 12 years. Jenkins was sentenced to a three-year minimum and 4.5-year maximum.

{¶ 28} The trial court acknowledged that "[t]here is some mitigation here" and stated it had considered factors such as Jenkins's age. The trial court also contemplated Jenkins's juvenile history.[4] Tr. 99.

> I've taken into consideration the damage caused here to multiple victims during a period of time when you just didn't stop. You didn't stop when you could have stopped.
>
> There should have been a realization as to the danger that you're putting the community in, as well as yourself.
>
> After your first event here on these matters, December 19, 2022, you continued on with the car belonging to [C.W.] on December 20, and then that very same day, carjacking [T.M.].
>
> And even more concerning is the fact that you had apparently almost an entire month of time for reflection before choosing to steal the car belonging to [F.S.], 79 years of age, with a shooting that occurred there.
>
> I'm going to take these into consideration as I review also the consecutive [sentencing] language in the statutes.

Tr. 99-100.

{¶ 29} The trial court stated that it reviewed each of the statutory factors for

---

[4] The juvenile history of an offender may be considered as prior criminal history for the purpose of imposing consecutive sentences. *State v. Batiste*, 2020-Ohio-3673, ¶ 20 (8th Dist.).

sentencing. On the elements of seriousness and recidivism, the trial court observed that Jenkins posed a danger to the community as he had committed crimes "for a very long period of time" and his history did not indicate that he was going to stop. "Balancing that with your age, because had you been older, your sentence would have been longer." Tr. 100.

{¶ 30} Further, to the issue of the trial court's consideration of the aggregate sentence "in the specific context of the R.C. 2929.14(C)(4) factors," Jenkins offers:

> While a sentence of 6 to 8.5 years might not be too much in relation to the seriousness of Appellant's conduct or the danger he poses to the public, the same may not be said for a consecutive term totaling 10 to 12.5 years or, as was ultimately imposed in this case, 14 to 19.5 years. This disproportionality analysis is required for each successive, consecutive sentence ordered because every successive sentence carries the presumption that it should be served concurrently. R.C. 2929.41(A). After each consecutive sentence is imposed the bar for each succeeding consecutive sentence is raised, and it becomes increasingly difficult to satisfy the R.C. 2929.14(C)(4) criteria. The trial court should have engaged in this analysis.

Appellant's brief at p. 19.

{¶ 31} Relatively recently, Ohio law has considered and reconsidered the scope of and standard for appellate review of consecutive sentences, including whether the aggregate sentence should be part of the analysis, and the deference *Hayes*, 2024-Ohio-845 (8th Dist.), is to be afforded to the trial court's decision. These inquiries have been conducted through a series of opinions culminating in plurality opinions in *State v. Gwynne*, 2023-Ohio-3851 ("*Gwynne V*"), and *State v.*

*Glover*, 2024-Ohio-5195.[5]

{¶ 32} The plurality decision in *Glover* stated that appellate review of the aggregate sentence is not required by the statute. This court has suggested, however, that the R.C. 2929.14(C)(4) proportionality finding requires the trial court to consider the aggregate prison term resulting from the imposition of multiple, consecutive sentences. *Hayes* at ¶ 35 (Eileen T. Gallagher, J., concurring in judgment only), citing *Gwynne V* at ¶ 81, 94 (Brunner, J., dissenting).

> "R.C. 2929.14(C)(4) requires a proportionality analysis, meaning that a sentencing court must consider the aggregate term of imprisonment to be imposed because, without such consideration, there is no coherent way to evaluate whether multiple, consecutive sentences are proportional to an offender's overall conduct for which the sentences have been imposed."

*Id.*, quoting *id.*

{¶ 33} After due consideration of the proceedings below, and mindful of the deference due to the trial court, we determine that the record in this instance clearly and convincingly supports the trial court's proportionality finding regarding the imposition of consecutive sentences in this case.

{¶ 34} The second assignment of error is overruled.

---

[5] "A plurality opinion is '[a]n opinion lacking enough judges' votes to constitute a majority but receiving more votes than any other opinion.' *Black's Law Dictionary* 1125 (8th Ed.2004). A plurality opinion from this court has 'questionable precedential value inasmuch as it * * * fail[s] to receive the requisite support of four justices * * * in order to constitute controlling law.'" *Gwynne V* at ¶ 68, fn. 6, quoting *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633 (1994). "[A] plurality opinion is not binding authority." *Nascar Holdings, Inc. v. Testa*, 2017-Ohio-9118, ¶ 18, citing *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44 (1986), *overruled on other grounds*, *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478 (1994).

### C. Failure to Merge

{¶ 35} Jenkins challenges the trial court's failure to merge Count 8, attempted grand theft, with Count 1, aggravated robbery, in CR-23-687734.

{¶ 36} An appellate court applies a de novo standard of review to determine whether two offenses are allied offenses of similar import. *State v. Williams*, 2012-Ohio-5699, ¶ 28; *State v. Anthony*, 2015-Ohio-2267, ¶ 14 (8th Dist.). The Double Jeopardy Clauses of the U.S. Const., amend. V, and the Ohio Const., art. I, § 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Id.* at ¶ 15, citing *State v. Martello*, 2002-Ohio-6661, ¶ 7, and *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the U.S. Const., amend. V, and of the Ohio Const., art. I, § 10, prohibiting multiple punishments for the same offense. *State v. McCarty*, 2015-Ohio-4695, ¶ 13 (8th Dist.).

{¶ 37} While,

[u]nder R.C. 2941.25, Ohio's multicount statute, where the defendant's conduct constitutes two or more allied offenses of similar import, the defendant may be convicted of only one offense. R.C. 2941.25(A). A defendant charged with multiple offenses may be convicted of all the offenses, however, if (1) the defendant's conduct constitutes offenses of dissimilar import, i.e., each offense caused separate identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivation. R.C. 2941.25(B); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13. Thus, to determine whether offenses are allied, courts must consider the defendant's conduct, the animus, and the import. *Id.* at paragraph one of the syllabus.

*State v. Clarke*, 2017-Ohio-8226, ¶ 26 (8th Dist.).

{¶ 38} In CR-23-687734, Count 1 aggravated robbery, R.C. 2911.01(A)(1), the indictment stated that on January 17, 2023, Jenkins

> did, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [F.S.] did have a deadly weapon, to wit: a firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

{¶ 39} Count 8 charged that on January 17, 2023, Jenkins

> did with purpose to deprive the owner, [F.S.], of property or services, to wit: 2016 Ford Truck, knowingly attempt to obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent.

{¶ 40} Jenkins proposes that the indictment and the evidence summary at sentencing support that both offenses involve attempting to commit a theft offense of the same item against the same victim. Thus, the offenses should be allied. The State agrees that the trial court's failure to merge the counts was in error.

{¶ 41} The case is remanded for merger of the offenses. The third assignment of error is sustained.

## IV. Conclusion

{¶ 42} The trial court's judgment is affirmed in part, reversed in part, and remanded for further proceedings pursuant to this opinion.

It is ordered that the parties share equally costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, P.J, CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 43} I concur in judgment only. I write separately because this case provides an opportunity to address aspects of the Reagan Tokes Law in greater detail. My intent is to provide a best-approach framework for the imposition of the non-life indefinite prison terms because in practice, courts have been using language that is inconsistent with statutory terms of art leading to inconsistent results. This causes considerable confusion in how to properly impose a sentence under R.C. 2929.14(A)(1)(a) and (2)(a), especially in consideration of the calculation required under R.C. 2929.144(B).

V. **Background on S.B. 201**

{¶ 44} On February 8, 2017, Reagan Tokes was abducted, robbed, raped, and murdered. She was a 21-year-old senior at Ohio State. Her assailant had just been released from prison after serving six years on a rape conviction. He had more than 50 institutional violations in five different prisons during that incarceration. Because he served a definite sentence, he was released at the end of his term despite the risk he posed to the community. Upon release, he was on postrelease control,

was registered as a sex offender, and was wearing a GPS ankle monitoring bracelet.

{¶ 45} The Tokes family and supporters were outraged that such a dangerous offender was released back into the community and demanded change. The legislature rushed to find a solution and, in lame-duck sessions at the end of 2018, responded with S.B. 201 ("The Reagan Tokes Law") that ushered in Ohio's return to indefinite sentencing, effective for crimes committed on or after March 22, 2019.

{¶ 46} The law covered 435 pages, amended 57 existing Ohio Revised Code (O.R.C.) sections, and enacted 5 new O.R.C. sections. The central parts of the new law were taken from the 2017 work of Ohio's Recodification Committee. The Ohio Criminal Justice Recodification Committee was created by the 130th Ohio General Assembly to study the State's existing criminal statutes, with the goal of enhancing public safety and the administration of criminal justice throughout the State of Ohio. The comprehensive work of that committee was not adopted by the legislature, but some portions related to indefinite sentencing were pulled from the committee's efforts and grafted into existing Crim.R. 29.

{¶ 47} The law was not well received by most practitioners. Many defense lawyers claimed it was unconstitutional, prosecutors found it to be confusing, and judges were frustrated by the math calculations necessary to imposing a basic sentence. Some trial judges ignored the law, feeling it was unconstitutional and would soon be overturned, while at least one judge found the law unconstitutional at the trial-court level. *State v. O'Neal*, Hamilton C.P. No. B-1903562 (Nov. 20,

2019); *State v. O'Neal*, 2022-Ohio-3017 (1st Dist.).

{¶ 48} Eventually the Supreme Court of Ohio rejected the constitutional challenges to the law, finding that the provisions allowing the Ohio Department of Rehabilitation and Corrections ("ODRC") to maintain incarceration beyond the minimum term did not violate the separation-of-powers doctrine; ODRC's evaluation of an inmate's conduct in prison did not violate the Sixth Amendment right to a jury trial; and the law provided adequate notice so it was not void for vagueness. *State v Hacker*, 2023-Ohio-2535.

{¶ 49} The problems associated with the Reagan Tokes Law did not end with the *Hacker* decision. If anything, moving the focus off the constitutional challenges exposed the challenges trial judges face in applying the law in practice. Even memorializing the outcomes of the non-life indefinite sentencings has become a complicated endeavor. This case is symbolic of these difficulties. The trial judge here is an extremely experienced and knowledgeable jurist who is known for taking pride in paying attention to detail. If a judge of this caliber has difficulty applying the law, it serves as evidence the legislature may want to revisit some provisions of The Reagan Tokes Law. What follows is my attempt to provide clarity, to the extent I am able, on what I believe the law requires. There will likely be those who disagree with some of my interpretations. In any event, appellate courts need to provide clarity on what the law requires so we can avoid needless reversals at the taxpayers' expense.

## VI. The *Saxon* Dilemma

{¶ 50} One of the biggest problems we see across Ohio is a fundamental misunderstanding about Ohio's sentencing scheme. While many trial judges think of an overall number or a "total outcome" when fashioning prison sentences, that is not the way Ohio's sentencing scheme works. Ohio focuses on the sentences imposed on each individual count and the concurrent or consecutive nature of how those sentences are to be served. *Reese v. Davis*, 2024-Ohio-5755, ¶ 12. Ohio does not use the sentencing-package doctrine and adding multiple prison terms to create an aggregate sentence for each case or among cases amounts to an impermissible sentencing package. *Id.* at ¶ 18 (Kennedy, C.J., concurring in judgment only). Under *State v. Saxon*, 2006-Ohio-1245, judges impose sentences on specific individual counts and not on the file as a whole. The case file or judgment entry is merely the collection point for the individual prison terms imposed. In other words, *Saxon* does not permit a court to look at a sentencing as part of a "package" that is used in some states and, in particular, the federal system. Under the "sentencing-package doctrine," all prison terms imposed within a file are looked upon as one sentence or as a "package." *See State v. Giancaterino*, 2022-Ohio-2142 (8th Dist.), and *State v. Scott*, 2022-Ohio-1486 (8th Dist.).

{¶ 51} "Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time." *Saxon* at ¶ 8. The trial court "must consider each offense individually and impose a separate sentence for each offense." *Id.* at ¶ 9, citing R.C. 2929.11 through 2929.19. "Only after the judge has imposed a

separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively." *Id.* The maximum term under R.C. 2929.144 and the Reagan Tokes Law is unique in that it is derived from a formula and not from a predetermined number or preset range. Once calculated, it can be applied across multiple prison terms on qualifying felonies within a file in satisfaction of R.C. 2929.14. *State v. Wilson*, 2023-Ohio-1042, ¶ 69 (8th Dist.). But other than the calculation, R.C. 2929.144 and 2929.14(A)(1)(a) and (2)(a) are no different than the rest of Ohio's sentencing schemes — the focus is on the individual offenses within each individual case.

{¶ 52} Under R.C. 2929.14(A)(1)(a) and (2)(a), the "prison term" for each individual offense "shall be an indefinite prison term with a stated minimum term . . . and a maximum term" as calculated under R.C. 2929.144. But make no mistake, the maximum term calculated and imposed under the Reagan Tokes Law for qualifying felony offenses of the first and second degree is only considered after the trial court "impos[es] a [stated minimum] prison term on an offender under R.C. 2929.14(A)(1)(a) or (2)(a). R.C. 2929.144(B). Thus, the trial court's focus under the Reagan Tokes Law remains on the individual offense at issue. The nature of how that non-life indefinite sentence is served (i.e., whether concurrent or consecutive) can only be considered after the trial court first imposes the stated minimum term on each offense.[6]

---

[6] "Non-life indefinite sentence" is defined under R.C. 2929.01(GGG) as any prison term imposed for a qualifying felony under R.C. 2929.14(A)(1)(a) or (2)(a), which applies to felonies of the first or second degree for crimes committed after March 22, 2019.

## VII. Global Sentencing Advisements and the Reagan Tokes Law

{¶ 53} One additional complicating factor in applying the Reagan Tokes Law is the desire by some judges to aggregate the sentence on all terms imposed on multiple counts in an individual file, or a global sentence for all terms on all counts across multiple files. This invariably leads to confusion and miscalculations. R.C. 2929.14 and current case law do not mandate that a "global" or even an "aggregate" sentence be imposed by the trial court. Nevertheless, it is understandable that some sentencing courts believe it to be good practice to give a full advisement of the total prison time a defendant will serve from a practical perspective. Although practical, that advisement is not necessary and, in fact, irrelevant to the formal imposition of the final sentence. *Reese*, 2024-Ohio-5755, at ¶ 12.

{¶ 54} In *State v. Johnson*, 40 Ohio St.3d 130, 133 (1988), the Ohio Supreme Court, in the context of a plea advisement, evaluated the need to advise on a global scale. The court found no such requirement. The court held:

> Upon its face, the rule (Crim.R. 11(C)) speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" that the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered. It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges, which a criminal defendant may answer in a single proceeding.

The question remains, what is required during the plea colloquy with respect to advising the offender of the non-life indefinite sentence?

{¶ 55} Under R.C. 2929.14, 2929.144, and *Saxon*, 2006-Ohio-1245, the maximum term cannot be determined until after the trial court sentences the offender on the individual terms. For the purposes of the Reagan Tokes Law, that means imposing the "stated minimum terms." The stated minimum terms for a first-degree felony range from 3 to 11 years in one-year increments, and two to eight years in one-year increments for a second-degree felony offense. Since the consecutive or concurrent determination cannot happen until sentencing, a trial court cannot know what the maximum term would be at the time of the plea colloquy because the calculations depend on that determination. *See* R.C. 2929.144(B).

{¶ 56} All too often, error in imposing a non-life indefinite sentence manifests in the attempt to calculate the maximum term prematurely, beginning as early as the plea colloquy. For example, in *State v. Tackett*, 2023-Ohio-2298, ¶ 11 (8th Dist.), the trial court attempted to advise the offender what the maximum term would be for each qualifying felony offense. *Id.* According to the trial court in that case, the offender could have served a potential sentence of two to eight years on the two second-degree qualifying felony offenses with "a potential total up to 12 years" on each offense due to the Reagan Tokes Law, but the court then stated that the "maximum sentence" would be 16 years.[7] *Id.* Stating the maximum term in that fashion is problematic. The "maximum term" under R.C. 2929.144 could only be 12

---

[7] The phrase "maximum sentence" is not an apt description of anything. It could mean the maximum aggregate sentence, but it also can be confused with the statutory phrase "maximum prison term" under R.C. 2929.144. It is important for courts to speak with clarity, lest improper interpretations arise.

years if the sentences are imposed concurrently. If imposed consecutively for those two counts, the maximum term could be up to 20 years. *See* R.C. 2929.144(B)(2). The panel nonetheless concluded that the plea was invalid because the trial court failed to properly advise the offender of the potential maximum term under R.C. 2929.144(B). *Id.* This highlights the danger of attempting to put a number to the maximum term during the plea colloquy.

{¶ 57} But just because the actual potential maximum term is unknown at the time of the plea does not mean an advisement is impossible. The maximum length of the so-called tail portion of the indefinite sentence is known based on the degree of the qualified offenses. Although the legislature does not use the term "tail," that term best describes the impact of the maximum term — the maximum term is derived from adding the tail (50 percent of the longest stated minimum or definite term imposed for the most serious felony being sentenced) to the aggregate of the stated minimums and the definite terms imposed (or simply the longest stated minimum or definite term if the multiple prison terms are concurrently imposed). *See State v. Tarver*, 2025-Ohio-1190, ¶ 18. Because the "tail" only describes the additional time that will be added to the minimum, the "tail" itself is not a sentence under R.C. 2929.14(A)(1)(a) or (2)(a), nor can it be considered "the indefinite sentence" — the maximum sentence is the aggregate of all terms consecutively imposed (or the longest concurrent term where applicable) plus the so-called tail.

{¶ 58} Under R.C. 2929.144(B) in general, the additional time imposed under the Reagan Tokes Law can be described as a tail that gets added to the

aggregate minimum term (which is comprised of the aggregate of all definite terms for nonqualifying felonies or stated minimum terms for the qualifying felonies). The maximum tail is always five and a half years for a first-degree qualifying felony and four years for a second-degree qualifying felony (half of the longest term available for the requisite degree felony). That is the only known figure during a plea colloquy because a trial court is not required to advise a defendant about the exact sentence for discretionary consecutive sentences. *State v. Norman*, 2009-Ohio-4044, ¶ 6 (8th Dist.), citing *Johnson*, 40 Ohio St.3d 130. If the sentencing court determines that a midrange or minimum sentence is appropriate within the respective sentencing ranges, the tail will be shorter. Thus, the above advisement of five and a half years for a first-degree qualifying felony and four years for a second-degree qualifying felony provides the worst-case scenario.

{¶ 59} Advising a defendant of the tail portion of the indefinite sentence during the plea colloquy satisfies Crim.R. 11 concerns and avoids unforced errors. *State v. Pennington*, 2024-Ohio-5483, ¶ 14 (8th Dist.), citing *State v. Vitumukiza*, 2022-Ohio-1170, ¶ 16, 19 (8th Dist.); *see also State v. Smith*, 2025-Ohio-1548, ¶ 19 (8th Dist.).

## VIII. Imposing the Non-Life Indefinite Sentences

{¶ 60} We now are at the heart of the problem in this case, a problem that is becoming too great to ignore in general. The imposition of the non-life indefinite sentences should not be overlooked as a rote exercise. As this case aptly demonstrates, simple mistakes with the complicated nature of the Reagan Tokes

Law sentencing scheme necessitate resentencings at the taxpayers' expense.

## IX. Statutory Terminology

{¶ 61} First and foremost, courts need to closely adhere to the statutory language at play. As the above-mentioned discussion highlights, there are several terms in need of defining and adhering to in practice.

{¶ 62} Under R.C. 2929.14(A)(1)(a) and (2)(a), the "prison term" for a qualifying first- or second-degree felony "shall be" an "indefinite term" with both a stated minimum term and a maximum term. The "indefinite term" refers to a "non-life indefinite sentence," which is defined under R.C. 2929.01(GGG) as any prison term imposed for a qualifying felony under R.C. 2929.14(A)(1)(a) or (2)(a) for felonies of the first or second degree for crimes committed after March 22, 2019. Thus, the phrase "prison term" in the context of "non-life indefinite sentences" includes the maximum term. "Maximum prison term" is a defined term of art that expressly includes the aggregate of all stated minimum and definite terms imposed under R.C. 2929.14 in addition to the tail, as calculated under R.C. 2929.144(B)(1), (B)(2), and (B)(3). R.C. 2929.144 excludes the prison terms imposed on attendant specifications or for indefinite life sentences from the "maximum term."

{¶ 63} There has also been discussion regarding the aggregate term. The "aggregate" term is simply a calculation of all prison sentences consecutively imposed. If several prison terms are concurrently imposed, the "operative sentence" is the longest sentence imposed, so there is no real "aggregate" in those situations. *See* Ohio Adm.Code 5120-2-03.1(D) (effective Apr. 25, 2025). The "operative

sentence" is simply the sentence that controls the offender's period of incarceration in practical terms.[8]  When sentences are consecutively imposed, all sentences comprising the aggregate sentence are operative, while in the concurrent context, only the longest actually controls.  *See* Ohio Adm.Code 5120-2-03.1(F).

{¶ 64} The "aggregate" sentence is shorthand for describing the "stated prison term," which is "'the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms imposed by the sentencing court." *State v. Kennedy*, 2024-Ohio-5728, ¶ 7, quoting R.C. 2929.01(FF)(1).  For all practical purposes, that reflects the "aggregate sentence" for the case.  R.C. 2929.14(C)(9) (the term to be served is the "aggregate of all terms" consecutively imposed).  An "aggregate prison term" or the "stated prison term" is the total of all prison terms to be served by the offender, which can include the non-life indefinite sentences under the Reagan Tokes Law, any definite sentences for non-qualifying felony offenses, any indefinite life sentences, and any prison term imposed for attendant firearm specifications.  As will be discussed below, a "stated" or "aggregate" prison term is not an actual prison term under Ohio law.  *See Saxon,* 2006-Ohio-1245.  The only sentences authorized by R.C. 2929.14 are those imposed upon individual offenses.

{¶ 65} The "stated prison term" is not to be confused with the "stated

---

[8] For example, if the offender was sentenced in a case with two counts, one a felony of the first degree and one a felony of the second degree, with concurrent terms of three and two years respectively, creating an indefinite sentence of 3 to 4.5 years under R.C. 2929.144(B)(3), the "operative sentence" is the 3 to 4.5-year indefinite term imposed on the first-degree felony.

minimum term" under R.C. 2929.14(A)(1)(a) and (2)(a). Under those provisions, the "stated minimum term" refers to the minimum sentence imposed on a first- or second-degree qualifying offense. As mentioned before, the "stated minimum terms" for a first-degree felony range from 3 to 11 years in one-year increments, and two to eight years in one-year increments for a second-degree felony offense.

{¶ 66} Intermixing these statutory phrases and terms of art or improperly aggregating sentences creates problems, as this case so aptly demonstrates. For example, Jenkins discusses a "total indefinite sentence of 5.5 years" and the lead opinion refers to "an indefinite sentence of 2.5 years," phrases that do not accurately describe the non-life indefinite sentences at issue, as will be shown below. Using the correct terminology will alleviate many of the issues in imposing non-life indefinite sentences.

## X. Application of R.C. 2929.14(A) and 2929.144 to the Current Case

{¶ 67} In the two cases before us, we must start with each separate case and the individual offenses in each case. Reviewing those will provide best practice overview for imposing those sentences.

### A. The Sentences at Issue

{¶ 68} CR-23-687734 involves four offenses: two qualifying felonies, a first-degree offense (Count 1) and a second-degree offense (Count 6); as well as a third-degree felony (Count 7), and a fifth-degree felony (Count 8). There was also a one-year firearm specification attendant to Count 1. The trial court imposed the sentences on Count 1 as follows:

A mandatory prison term of 1 year(s) on the 1-year firearm specification specification(s) to be served prior to and consecutive to a minimum prison term/aggregate prison term of 5 year(s) and a maximum prison term of 7.5 year(s) on the underlying offense(s). The total stated prison term is 6 to 8.5 years in prison for this case, to be run consecutive to case 687782 at the Lorain Correctional Institution.

All other sentences within that case file were concurrently imposed. Although one could quibble with the court's equating "a minimum prison term" with "aggregate prison term," in all other respects the trial court's imposition of the one-year term on the firearm specification consecutive to the non-life indefinite sentence of 5 to 7.5 years is correct.

{¶ 69} CR-23-687782 is more problematic. That case file involves six offenses: only two qualifying felony offenses (Count 1 and Count 9) and four other misdemeanor or fourth- or fifth-degree felony offenses. The trial court imposed the sentences as follows:

Count(s) 5 merge into Count 1. State elects to proceed as to Count 1, F1: a prison term of SB201 sentence imposed, 1 year(s) mandatory prison on the 1-year firearm specification specification(s) to be served prior to and consecutive to 3 year(s) and a maximum 4.5 year(s) on the base charge, to be run consecutive with Count 9 and consecutive with case 687734; a mandatory minimum 2 years, up to a maximum of 5 years post release control.

. . . [and]

Count(s) 12 merge into Count 9. State elects to proceed as to Count 9, F2: 1 year(s) mandatory prison on the 1 year firearm specification specification(s) to be served prior to and consecutive to 3 year(s) on the base charge, on Count 9: SB201 sentence. Defendant to serve a minimum prison term of 3 years with an indefinite prison term of 1.5 years, for a stated prison term of 4 to 5.5 years.

. . .

> The court imposes a mandatory prison term of 2 year(s) on the 2 — 1 year firearm specifications for Count 1 and Count 9 specification(s) to be served prior to and consecutive to a minimum prison term/aggregate prison term of 6 year(s) and a maximum prison term of 9 year(s) on the underlying offense(s).The total stated prison term is 8 to 11 years in prison for this case, to be run consecutive to case 687734 at The Lorain Correctional Institution.

The remaining sentences in this file were concurrent and of shorter duration, making the sentences imposed on Counts 1 and 9 the "operative" sentences.

{¶ 70} As to this case, the trial court incorrectly calculated the maximum term under R.C. 2929.144(B) and then incorrectly articulated the aggregate or stated prison term for the case. The maximum term is not 4.5 years for Count 1, and R.C. 2929.144 does not authorize the imposition of an "indefinite prison term" of 1.5 years as imposed on Count 9. The description of the "indefinite prison term" appears to reflect the tail portion of the maximum term, but this highlights the need for courts to use the proper terminology. *See, e.g., State v. Johnson*, 2024-Ohio-3106, ¶ 15 (8th Dist.) (improperly describing the "tail" as the "indefinite sentence" under R.C. 2929.144). This is an important distinction.

{¶ 71} Under Ohio law, there is the "non-life indefinite sentence" under R.C. 2929.01(GGG), which is also referred to as "an indefinite sentence" in other statutory provisions. *See* R.C. 2929.14(C)(10) (all definite or mandatory terms imposed on the offender must be served before the indefinite sentence imposed on a qualifying felony offense). Thus, the 1.5 years can be described as a "tail" but cannot be classified as the "indefinite sentence" that is comprised of the stated

minimum and the maximum term. The imprecise language complicates an already complicated sentencing procedure.

**B. The Sentences That Should Have Been Imposed in CR-23-687782**

{¶ 72} sentencing court must start with the minimum stated terms under R.C. 2929.14(A)(1)(a) or (2)(a) (whichever is applicable) when imposing a sentence for a qualifying felony offense. In CR-23-687782, the operative sentences were imposed on Counts 1 and 9 in light of the merging of offenses and the shorter sentences imposed on the other counts. Those stated minimum terms were three years each, both to be served consecutive to each other and the one-year firearm specifications on each offense.

{¶ 73} After determining that the base sentences on Counts 1 and 9 would be consecutively served to each other (and consecutively to the aggregate sentence imposed in CR-23-687734), the court could then calculate the maximum prison term under R.C. 2929.144(B)(2). Because the sentences on the firearm specifications and the sentences imposed in CR-23-687734 are not to be included in that calculation, the maximum term for CR-23-687734 is 7.5 years (3 + 3 + 1.5).

{¶ 74} Thus, the operative sentences in that case should have been imposed as

> Count 1: a one (1)-year prison term for the firearm specification to be served consecutive to the stated minimum term of three (3) years;

> Count 9: a one (1)-year prison term for the firearm specification to be served consecutive to the stated minimum term of three (3) years;

The base sentences on both those counts are to be served consecutively and by operation of R.C. 2929.144(B)(2), the maximum term for all qualifying felony offenses is 7.5 years.

Expressing the maximum term in this fashion complies with Crim.R. 32 and R.C. 2929.14(A)(1)(a) and (2)(a), which require the trial court to impose a sentence for each qualifying felony offense that includes both the minimum stated term and the maximum term. That, however, is not the only way to accurately impose the non-life indefinite sentence.

## C. Understanding *Wilson*

{¶ 75} In *Wilson*, 2023-Ohio-1042, at ¶ 69 (8th Dist.), the panel concluded that under the plain reading of R.C. 2929.14(A)(1)(a) and (2)(a), the sentencing court is required to impose both the minimum and maximum term for each offense. *Id.* at ¶ 68; *but see State v. Hollowell,* 2024-Ohio-4581, ¶ 19 (8th Dist.) (noting that the State incorrectly agreed that the trial court erred by "fail[ing] to 'select one [aggravated robbery] count to add the "Reagan Tokes tail" to' and instead 'selected both'").[9] The *Wilson* panel aptly described R.C. 2929.144 as governing the calculation of the maximum terms while R.C. 2929.14 controls the imposition of the sentence. *Id.*

{¶ 76} It appears as if the panel in *Wilson* endorsed calculating the

---

[9] To be clear, neither R.C. 2929.144 nor 2929.14(A)(1)(a) and (2)(a) requires the sentencing court to select the count for which the "tail" applies. There is no statutory authority for this interpretation of R.C. 2929.14(A)(1)(a) and (2)(a), which requires an indefinite sentence for each individual qualifying felony offense. An indefinite sentence under those subdivisions includes both the minimum and the maximum term.

maximum term on each individual count, by only adding the tail to the individual offenses to be served concurrently (making the operative sentence instead of performing the calculation under R.C. 2929.144(B)(3) — the trial court imposed several four-year terms on sentence, one of the four to six-year indefinite terms and the (B)(3) calculation simply adding the tail to the longest term of four years).[10] But, that appearance is deceiving. Under R.C. 2929.144(B)(3), the maximum term is calculated using the longest individual term imposed, plus the tail (one-half of the longest term). That same singular maximum term created under the R.C. 2929.144(B)(3) formula applies equally to all the other qualified terms within that case file. *Wilson* does not stand for the proposition that a trial judge calculates four separate maximum terms that just happen to be the same. The correct approach is to create one maximum term under the formula and then apply that maximum term so created to each of the individual qualifying offenses in the file satisfying the requirements of R.C. 2929.14(A)(1)(a) and (2)(a).

---

[10] In *State v. Tinsley*, 2024-Ohio-2157 (7th Dist.), the Seventh District followed *Wilson* with respect to recognizing the language under R.C. 2929.14(A)(1)(a) and (2)(a) requiring both the minimum and maximum terms for each qualifying felony offense. In *Tinsley*, however, the sentencing and appellate courts both misstated the maximum term similar to the method incorrectly used in the underlying case. *Id.* at ¶ 5. The courts both considered the maximum term under R.C. 2929.144(B) as being calculated solely on the individual offense instead of using the calculations under subdivision (B)(2) or (B)(3). The trial court, in pertinent part, sentenced the offender to indefinite terms of four to six years on Count 1, four to six years on Count 2, and two to three years on Count 7. *Id.* at ¶ 5. Because those non-life indefinite sentences were concurrently imposed, the indefinite sentence on Count 7 should have been two to six years, since under R.C. 2929.144(B)(3), the maximum term is calculated based on the tail from the longest sentence imposed plus that longest sentence imposed. That error was not addressed in the decision but is a common one. *See, e.g., In re K.F.*, 2025-Ohio-1216, ¶ 6, 26 (3d Dist.) (correcting the trial court's calculation).

{¶ 77} Nevertheless, under *Wilson*, the individual sentences in this case could also be imposed as follows:

> Count 1: a one (1)-year prison term for the firearm specification to be served consecutive to the stated minimum term of three (3) years and a maximum term of 7.5 years;
>
> Count 9: a one (1)-year prison term for the firearm specification to be served consecutive to the stated minimum term of three (3) years and a maximum term of 7.5 years;

*See id.*

{¶ 78} R.C. 2929.14(A)(1)(a) and (2)(a) require a sentencing court to impose both the minimum and the maximum term on each and every qualifying felony offense.[11]  Both of the above phrasings address that requirement.  A sentence that does not impose the indefinite term in its totality for each qualifying offense is contrary to law.  *See id., but see State v. Eggleton*, 2025-Ohio-1186, ¶ 14 (8th Dist.) (concluding that the imposition of a S.B. 201 tail on only one of the qualifying

---

[11] It is conceivable that imposing the maximum term on each offense may lend itself to the question of whether the maximum term can be aggregated when sentences are consecutively imposed.  Under R.C. 2929.14(A)(1)(a) and (2)(a), the "prison term" for a qualifying first- or second-degree felony "shall be" an indefinite term with both a stated minimum term and a maximum term.  Thus, the "prison term" includes the maximum term.  Under subdivision (C)(4), the sentencing court has authority to require an offender to serve "the prison terms" consecutively.  Because the phrase prison terms as used in subdivision (C)(4) incorporates the earlier definition of "prison terms" for a first- and second-degree felony indefinite sentence, the statute could be read to permit the stacking of both the minimum and the maximum terms as being part of the overall "prison sentence" for that offense.

offenses was required by statute).[12]

{¶ 79} There are numerous ways to express the stated prison term (or aggregate prison term) if a court is so inclined, although there is no requirement under Ohio law to provide or announce an aggregate sentence. *See Saxon,* 2006-Ohio-1245. In fact, attempting to aggregate the sentence should be avoided because it does not alter the individual sentences imposed. *Reese*, 2024-Ohio-5755, at ¶ 12 (concluding that trial court's attempt to provide an aggregate sentence was based on bad math, but even if correctly calculated, only the individual sentences mattered for the purpose of ODRC calculating the offender's ultimate sentence). But if a trial court undertakes this error-prone calculation in a case like this one, the non-life indefinite sentence can be described as being a 6 to 7.5-year term to be served consecutive to the aggregate two-year term on the firearm specifications. It can also be expressed as a complete aggregate term; in other words, the stated prison term for this case is an indefinite term of 8 to 9.5 years (by simply adding the two-year aggregate term from the firearm specifications to each end of the 6 to 7.5-year non-life indefinite sentence). But when aggregating, it is important that legal terms of art are not mixed. In other words, the 8 to 9.5 years reflects the aggregate or total stated prison term, it is not the "maximum prison term" as defined under R.C. 2929.144.

---

[12] *Eggleton's* conclusion conflicts with the decision reached in *Wilson* regarding the need to impose a non-life indefinite sentence on each qualifying felony offense. Notwithstanding, because *Eggleton* did not address R.C. 2929.14(A)(2)(a), the decision does not alter the law in this district.

{¶ 80} In this case, the trial court erred by calculating the maximum term as being nine years after individually imposing 4.5-year maximum terms on each individual qualifying felony offense. There is only one maximum term as calculated through R.C. 2929.144(B) and that term is 7.5 years in this particular case. R.C. 2929.144(B)(2) does not support the imposition of a 4.5-year maximum term for either count in this case.

{¶ 81} Notwithstanding all this, I cannot agree with the lead opinion's conclusion that "the indefinite sentence should have been 2.5 years resulting in a total aggregate sentence of 14 to 16.5 years." That is not a statutorily authorized sentence under R.C. 2929.14 and 2929.144. But this highlights another important issue in sentencing.

{¶ 82} The trial court and the lead opinion attempt to provide a global sentence by aggregating the stated prison terms as between the two cases. The trial court's version was "defendant is sentenced on cases 687734 and 687782 to serve a minimum prison term of 14 years with an indefinite prison term of 5.5 years, for a maximum prison term of 19.5 years. The total stated prison term for cases 687734 and 687782 is 14 to 19.5 years." The lead opinion condenses this down to "a total aggregate sentence of 14 to 16.5 years" as between the two cases. This poses its own set of problems. ODRC cannot implement such a sentence because the agency focuses on individual offenses within each individual case's file. *See* https://perma.cc/6KKY-3X7N (the current implementation of Jenkins's sentences

is described as: "3.00 GUN + 5.00-7.50 SB201 + 6.00-9.00 SB201").[13]  Further, there is no provision under Ohio's sentencing law to aggregate the sentences in the way the trial court and lead opinion are attempting.  *See Reese*, 2024-Ohio-5755, at ¶ 18 (Kennedy, C.J., concurring in judgment only) ("the only sentences that matter in this case are the individual ones imposed on each count — the trial court's statement that it imposed an aggregate sentence" is irrelevant).

{¶ 83} It is one thing to notify or advise the defendant of the practical effect (i.e., the global aggregate) of the sentences imposed, but in formally announcing and imposing the sentence, trial courts need not produce, and indeed should refrain from, providing a global or aggregate sentence, *especially* between case files.  Those two types of announcements while practical for the defendant are not actual sentences under Ohio law in light of *Saxon,* 2006-Ohio-1245.  *Id*.  Sentences should only be imposed on the individual offenses along with any attendant specification or other penalties.  After those sentences are imposed, the sentencing court must decide whether they are to be served consecutively or concurrently.  Journalizing the individual sentences and the nature of their service is the only requirement under Ohio law.

---

[13] The "3.00 GUN" refers to all three one-year sentences for the three firearm specifications in both cases that must be served first and consecutive to all other base offenses.  The separate annotation for each S.B. 201 refers to the base sentences in each case file, demonstrating how ODRC focuses on the individual cases.  Upon remand, the "6.00-9.00 SB201" should be amended to reflect the actual non-life indefinite sentence of 6 to 7.5 years imposed in CR-23-687782 once processed, but it will not reflect a "global aggregate sentence" of any fashion.

## XI. Conclusion

{¶ 84} For this reason, I cannot join the lead opinion in attempting to provide a global sentence of 14 to 16.5 years as between the cases. There is no statutory authority to globally aggregate the sentences as between case files. Because the trial court correctly calculated the stated prison term for case CR-23-687734, I would limit the remand to simply deleting the language attempting to provide a global aggregate sentence in that case. The remainder of that sentence is correct. As to case CR-23-687782, the sentences imposed on Counts 1 and 9 must be reversed and the matter remanded for resentencing consistent with the foregoing. I thus agree with the lead opinion inasmuch as the sentences imposed in the latter case are not authorized by law.

{¶ 85} I also cannot join the lead opinion's analysis in reviewing the consecutive-sentence question as between the two cases. Jenkins's only argument pertains to his youth at the time of the offenses. Age of the offender is not a factor to be considered under R.C. 2929.14(C)(4) for offenders convicted of felony offenses in the general division. *State v. Brabson*, 2023-Ohio-449, ¶ 9 (8th Dist.). The analysis should end there.

{¶ 86} And finally, I disagree with the lead opinion's standard of review for the merger argument. Jenkins did not object to the merger question with respect to the grand theft and aggravated robbery count. Tr. 88:4-8. Our review is not de novo, but for plain error. Nonetheless, the State concedes the error. That suffices.

{¶ 87} For these reasons I concur in judgment only.